PRISCILLA OWENBY v. FRED JOHNSON YOUNG

No. 286PA02

(Filed 2 May 2003)

**Child Support, Custody, and Visitation— custody—claim by deceased parent's mother—unfitness of surviving parent— evidence insufficient**

The trial court did not err by dissolving temporary child custody orders where plaintiff-maternal grandmother failed to carry her burden of demonstrating that defendant-father forfeited his constitutionally protected status as a parent, and the best interest of the child test was not implicated.

On discretionary review pursuant to N.C.G.S. § 7A-31 and appeal of right of a constitutional question pursuant to N.C.G.S. § 7A-30(1) to review a unanimous decision of the Court of Appeals, 150 N.C. App. 412, 563 S.E.2d 611 (2002), reversing and remanding an order entered 3 January 2001 by Judge Robert S. Cilley in District Court, McDowell County. Heard in the Supreme Court 5 February 2003.

*LeCroy Ayers & Willcox, PLLC, by M. Alan LeCroy, for plaintiff-appellee.*

*C. Gary Triggs, P.A., by C. Gary Triggs, for defendant-appellant.*

MARTIN, Justice.

Fred Johnson Young (defendant) married Priscilla Price Young (decedent) on 13 July 1985. Defendant and the decedent had two children: one born 12 May 1989 and the other born 11 December 1990. In 1993, defendant and the decedent divorced. The two executed a separation agreement, later incorporated into a court order, granting primary custody of the children to decedent. Defendant was given secondary custody, structured as visitation.

On 28 April 2000, the decedent was killed in an airplane crash. The children thereafter resided with defendant for about four weeks until the decedent's mother, Priscilla Owenby (plaintiff), filed a complaint on 26 May 2000 seeking custody of the minor children and *ex parte* relief. An order was entered that day granting temporary custody to plaintiff.

OWENBY v. YOUNG

[357 N.C. 142 (2003)]

On 2 June 2000, defendant filed a motion to dissolve the temporary custody order and a motion to change venue. The trial court entered a temporary order on 21 July 2000, which left the children in plaintiff's custody. Defendant filed a motion to dismiss, an answer, and a counterclaim for custody on 28 July 2000. The trial court denied defendant's motion to change venue on 18 August 2000. On 21 August 2000, defendant filed a motion for a new hearing and for amendment of the previous judgment, and on 28 November 2000, defendant filed a motion for relief from the order. The matter came on for hearing on 7 December 2000 and again on 18 December 2000.

In her complaint, plaintiff alleged that defendant was not a fit and proper person to have the care, custody, and control of the minor children. The principal basis of plaintiff's complaint was her allegation that defendant had a "problem with alcohol abuse." To further support her contention that defendant's conduct was inconsistent with his protected status as natural parent, plaintiff alleged that defendant continued to drive even though his license had been revoked. Plaintiff also alleged that "defendant [was] a very unstable person." More specifically, plaintiff asserted that defendant did not have steady employment and that he was economically unstable.

The trial court ultimately concluded that plaintiff had not provided the factual basis necessary to override defendant's constitutionally protected right to the care, custody, and control of his children. The trial court made the following specific findings of fact:

5. Plaintiff alleges (paragraph 7(a)) that defendant "has a lifelong problem with alcohol abuse," and that during his marriage to the mother "he spent a lot of time drunk." As to the latter allegation, whatever it means, the evidence offered did not address it. As to plaintiff's alleged lifelong problem, it is a fact that he was convicted of driving while impaired in December of 1995, and that he was again convicted of it on April 13, 2000 (out of an arrest sometime late in 1999). . . . No evidence was presented as to defendant's blood alcohol level in either of his DWI arrests . . . and except for those two arguable occasions in a five-year period, there was no evidence that he drinks to the point of intoxication, either regularly or ever. In sum, the court can certainly find that defendant drinks on a fairly frequent basis, but to go beyond that, and in particular to find that defendant has a problem with alco-

hol abuse (let alone a lifelong problem) exceeds the evidence before the court, even by inference.

6. . . . [P]laintiff alleges . . . that [defendant's] job history and performance have remained . . . spotty since the parties' separation. This turns out not to be the case. Defendant has been eight years with the same employer, and has a good record as an employee, working in the office of a mechanical company.

7. . . . It is indeed the case that defendant has filed for bankruptcy, but it was not made to appear, by him or by plaintiff, what the reason for his insolvency was. He says his finances are better now, and nothing rebuts his claim.

. . . .

10. Defendant has, to his sons' knowledge, driven on the public roads after his license was revoked on at least one occasion: the night he drove to plaintiff's, after learning that the [children's] mother had died. Other instances of driving were the subject of [the children's] testimony, but these instances turned out to be not on the public roads.

Based on these findings, the trial court dismissed plaintiff's action and dissolved all temporary orders previously entered.

On appeal, the Court of Appeals reversed the decision of the trial court and remanded for reconsideration. *Owenby v. Young*, 150 N.C. App. 412, 563 S.E.2d 611 (2002). The Court of Appeals concluded that defendant had acted in a manner inconsistent with his constitutionally protected status as the natural parent, and therefore the "best interest of the child" standard should be applied to determine custody. *Id.* at 416, 563 S.E.2d at 614. On 15 August 2002, we retained defendant's notice of appeal based upon a constitutional question and allowed defendant's petition for discretionary review.

At the outset, we note that the "Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 147 L. Ed. 2d 49, 57 (2000). This parental liberty interest "is perhaps the oldest of the fundamental liberty interests" the United States Supreme Court has recognized. *Id.* at 65, 147 L. Ed. 2d at 56. This interest includes the right of parents to establish a home and to direct the upbringing and education of their children. *Meyer v. Nebraska*, 262 U.S. 390, 399-400, 67

L. Ed. 1042, 1045-46 (1923). Indeed, the protection of the family unit is guaranteed not only by the Due Process Clause, but also by the Equal Protection Clause of the Fourteenth Amendment and possibly by the Ninth Amendment. *Stanley v. Illinois*, 405 U.S. 645, 661, 31 L. Ed. 2d 551, 559 (1972).

We acknowledged the importance of this liberty interest nearly a decade ago when this Court held: "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally protected paramount right of parents to custody, care, and control of their children must prevail." *Petersen v. Rogers*, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994). The protected liberty interest complements the responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child. *Price v. Howard*, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997) (citing *Lehr v. Robertson*, 463 U.S. 248, 257, 77 L. Ed. 2d 614, 624 (1983)). The justification for the paramount status is eviscerated when a parent's conduct is inconsistent with the presumption or when a parent "fails to shoulder the responsibilities that are attendant to rearing a child." *Id.* Therefore, unless a natural parent's conduct has been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent offends the Due Process Clause of the United States Constitution. *See Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 520 (1978), *quoted in Adams v. Tessener*, 354 N.C. 57, 61, 550 S.E.2d 499, 502 (2001), *and in Price*, 346 N.C. at 78, 484 S.E.2d at 534. Furthermore, the protected right is irrelevant in a custody proceeding between two natural parents, whether biological or adoptive, or between two parties who are not natural parents. *Adams*, 354 N.C. at 61, 550 S.E.2d at 502 (citing *Price*, 346 N.C. at 72, 484 S.E.2d at 530). In such instances, the trial court must determine custody using the "best interest of the child" test. *Id.*

There are at least two methods a court may use to find that a natural parent has forfeited his or her constitutionally protected status. First, N.C.G.S. § 7B-1111 sets forth nine different grounds upon which a court may terminate parental rights. N.C.G.S. § 7B-1111 (2001). The finding of any one of the grounds is sufficient to order termination. N.C.G.S. § 7B-1111(a). With the exception of a child's right to inherit from a parent, a termination of parental rights order completely and permanently severs all rights and obligations of the parent to the child and the child to the parent. Suzanne Reynolds, *Lee's North Carolina Family Law* § 17.44.a (5th ed. 2002). This statutory proce-

dure is not the subject of the present case. Second, when a court finds parental conduct inconsistent with the protected status, the parent's paramount right to custody may be lost. *Price*, 346 N.C. at 79, 484 S.E.2d at 534. Once a court determines that a parent has actually engaged in conduct inconsistent with the protected status, the "best interest of the child test" may be applied without offending the Due Process Clause. *Id.* In short, "the government may take a child away from his or her natural parent only upon a showing that the parent is unfit to have custody, or where the parent's conduct is inconsistent with his or her constitutionally protected status." *Adams*, 354 N.C. at 62, 550 S.E.2d at 503 (citations omitted).

The present case is not the first occasion on which this Court has considered whether a parent forfeited his or her constitutionally protected status. An examination of our precedent naturally guides our discussion here. In *Price v. Howard*, this Court examined whether a period of voluntary nonparent custody constituted conduct inconsistent with the protected status of a natural parent. *Price*, 346 N.C. at 79, 484 S.E.2d at 535. Evidence in *Price* indicated that the natural mother of the child had been an active participant in the first three years of her daughter's life. It was not clear, however, how much contact the mother had with her daughter after that initial three-year period. Moreover, some evidence indicated that the mother had voluntarily relinquished custody to an individual who had essentially functioned as the child's father for an indefinite period of time without discussion of the anticipated duration of such relinquishment. *Id.* at 83, 484 S.E.2d at 537. Noting that "failure to maintain personal contact with the child or failure to resume custody when able" could amount to conduct inconsistent with the protected parental interests, this Court remanded for a determination of the circumstances surrounding the mother's relinquishment of custody. *Id.* at 83-84, 484 S.E.2d at 537.

Similarly, in *Adams v. Tessener* we examined a father's failure to seize the opportunity to become involved as a parent in his child's life. *Adams*, 354 N.C. 57, 550 S.E.2d 499. The trial court in *Adams* found that even though the child's mother informed the father of the likelihood that he had fathered the child, he "elected to do 'nothing' about the pregnancy and impending birth." *Id.* at 66, 550 S.E.2d at 504. The trial court found that the father had never inquired about the health and progress of the child, either before or after the mother informed him that he would be contacted by the Department of Social Services concerning child support payments. *Id.* at 66, 550 S.E.2d at

504-05. This Court held that the father's conduct was inconsistent with his protected interest in the child and that the trial court appropriately applied the "best interest of the child" standard in determining custody. *Id.* at 66, 550 S.E.2d at 505.

Most recently, in *Speagle v. Seitz*, 354 N.C. 525, 557 S.E.2d 83 (2001), we emphasized that evidence of a parent's conduct should be viewed cumulatively. In *Speagle*, the trial court determined that the mother's employment as a topless dancer and her " 'lifestyle and romantic involvements' resulted in her 'neglect and separation from the child.' " *Id.* at 528, 557 S.E.2d at 85. Evidence also suggested that the mother participated in the murder of the child's father. *Id.* at 532-33, 557 S.E.2d at 87-88. Concluding that the question of whether one parent had murdered the other was relevant to the constitutional inquiry, this Court held that the trial court had correctly determined that the mother's actions were inconsistent with her protected status. *Id.* at 533-34, 557 S.E.2d at 88. Thus, the trial court properly applied the "best interest of the child" test to determine the child's custody. *Id.*

In a custody proceeding, the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary. *Adams*, 354 N.C. at 63, 550 S.E.2d at 503; *In re Custody of Orr*, 254 N.C. 723, 726, 119 S.E.2d 880, 882 (1961). Moreover, the trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence. *Adams*, 354 N.C. at 63, 550 S.E.2d at 503. Conduct such as that alleged by plaintiff in the present case "must be viewed on a case-by-case basis." *Price*, 346 N.C. at 79, 484 S.E.2d at 534, *quoted in Speagle*, 354 N.C. at 531, 557 S.E.2d at 86.

Plaintiff here supported her allegation that defendant had a "problem with alcohol abuse" by offering evidence that defendant had twice been convicted of driving while impaired. The trial court found, however, that "except for those two arguable occasions in a five-year period, there was no evidence that [defendant] drinks to the point of intoxication, either regularly or ever." The trial court rejected plaintiff's contention, stating that "to find that defendant has a problem with alcohol abuse (let alone a lifelong problem) exceeds the evidence before the court, even by inference." We would add that defendant did not have primary custody of the children, nor were they accompanying him, on either of the occasions for which he received a driving while impaired citation.

OWENBY v. YOUNG

[357 N.C. 142 (2003)]

The trial court also carefully considered plaintiff's assertion that defendant often drove without a valid driver's license. The only evidence of this allegation was the childrens' testimony that defendant "drove to plaintiff's [residence], after learning that the [children's] mother had died." The trial court found that other reported instances of driving "turned out to be not on the public roads."

With respect to the allegation that defendant "is a very unstable person," the trial court did not discern any problem with defendant's employment or economic situation. In fact, the trial court found that "[d]efendant has been eight years with the same employer, and has a good record as an employee." The trial court also found that nothing contradicted defendant's assertion that he was financially stable.

As we stressed in *Adams*, the Due Process Clause of the Fourteenth Amendment ensures that the government does not impermissibly infringe upon a natural parent's paramount right to custody solely to obtain a better result for the child. *Adams*, 354 N.C. at 62, 550 S.E.2d at 503 (citing *Troxel*, 530 U.S. at 72-73, 147 L. Ed. 2d at 61). Until, and unless, the movant establishes by clear and convincing evidence that a natural parent's behavior, viewed cumulatively, has been inconsistent with his or her protected status, the "best interest of the child" test is simply not implicated. In other words, the trial court may employ the "best interest of the child" test only when the movant first shows, by clear and convincing evidence, that the natural parent has forfeited his or her constitutionally protected status.

In the instant case, plaintiff failed to carry her burden of demonstrating that defendant forfeited his protected status. The evidence of record supports the trial court's findings of fact, which in turn support its legal conclusion that defendant's protected status as parent was not constitutionally displaced. Accordingly, we reverse the Court of Appeals' decision and remand this case to that court for further remand to the District Court, McDowell County, for reinstatement of the trial court's order.

REVERSED.