617 S.E.2d 288 (2005)
168 N.C. App. 206
In re L.D.B.
No. COA 04-194.
Court of Appeals of North Carolina.
January 18, 2005.
*289 Thurman, Wilson & Boutwell, by W. David Thurman, for petitioner-appellee.
Rebekah W. Davis, for respondent-appellant.
HUDSON, Judge.
Respondent Mungo appeals the trial court's order terminating parental rights of minor child L.D.B. For the reasons set forth below, we reverse the decision of the trial court.
Minor child L.D.B. was born in August of 2001, at which time her mother surrendered parental rights and put her up for adoption. At that time, the mother refused to give the adoption agency the father's name. Within a couple of weeks, though, the mother named respondent Mungo as L.D.B.'s father, and he acknowledged that he could be the father. Respondent Mungo and petitioner, the adoption agency (hereinafter "the agency"), discussed paternity testing, but could not agree where the test would be performed or who would pay for it. The record reveals nothing further on this case until the agency filed the petition for termination of parental rights (TPR) on 22 July 2002. The petition named Mungo as the father and the sole respondent, alleging as grounds failure to support the child. Mungo asserts that the parties were unable to agree on a cost effective paternity test, while the agency argues that respondent agreed to pay for half but did not follow through. The agency filed a motion for a paternity test on 8 November 2002 and on 7 January 2003 the court entered an order for Mungo to submit to the test.
Mungo missed two court-imposed deadlines for the test and was sanctioned by the court on 31 March 2003. Also on that date, the court again ordered him to arrange for the test and notify the court once it was completed. The test was completed on or about 10 April 2003. Mungo asserts that the test results were not delivered to the court or the parties' attorneys, but were held by the Child Support Enforcement Agency until his attorney went to the agency office and got a copy of the top page of the test on 6 May 2003. His attorney then transmitted a copy of the paternity test to the agency's counsel, who sent it directly to the court. The test showed a zero percent probability that Mungo is L.D.B.'s father.
In a 6 May 2003 letter to the agency's counsel, Mungo's attorney stated, "if I hear nothing from my client, I do not plan to be at the next hearing which will enable you to proceed in whatever manner you wish." Eight days later, on 14 May 2003, the TPR hearing was held. Mungo and his attorney attended and attempted to proffer evidence, but the court did not allow them to introduce any evidence, declaring that Mungo had no standing, based on the results of the paternity test. On 29 May 2003, the court entered orders excluding Mungo as the father of the child and terminating the parental rights of the father.
Respondent Mungo first argues that the trial court erred in refusing to hold a full and fair hearing or take any evidence regarding the issue of paternity. We agree. It is well-established that a termination of parental rights must comply with the requisites of the Due Process Clause. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599, 606 (1982). "The fundamental premise of procedural due process protection is notice and the opportunity to be heard." Peace v. Employment Sec. Comm'n, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998).
Here, the TPR petition alleges that "[t]he identified father of the child in this action is" Mungo and that sufficient grounds exist to terminate his parental rights pursuant to N.C. Gen.Stat. § 7B-111(a)(1), (3), (5) and (7) (2003). Although Mungo was duly served with the petition to terminate his parental rights and was present at the hearing, the trial court nevertheless chose not to hear any argument or receive any evidence from Mungo. The judge told Mungo's attorney:
At the stage we are in these proceedings, I think it's most appropriate that your client be excluded from any opportunity to offer evidence at this point .... According to the official result of the paternity test ordered by the Court, it's this Court's ruling that he does not have standing to participate in this hearing and that as to his interest, this hearing is complete (emphasis added).
*290 The court holds a hearing in order to determine the existence or nonexistence of the grounds alleged in the TPR petition. N.C.G.S. § 7B-1109 (2003). Our Supreme Court has recognized that the "parental liberty interest `is perhaps the oldest of the fundamental liberty interests.'" Owenby v. Young, 357 N.C. 142, 144, 579 S.E.2d 264, 266 (2003). Similarly, this Court has previously concluded that, at an adjudication of neglect hearing, "the trial court must protect the due process rights not only of the child, but also of the parent." Thrift v. Buncombe County Dep't of Soc. Servs., 137 N.C.App. 559, 561, 528 S.E.2d 394, 395 (2000). We conclude that these due process rights also extend to the parent during a termination proceeding. We further conclude that the right of a named respondent to offer evidence regarding the petition's allegations, including whether the respondent is actually a parent of the minor child, is inherent in the protection of due process. Thus, having properly been made a party to the proceedings, Mungo was entitled to an adequate opportunity to be heard regarding the termination of his parental rights, unless and until the trial court either dismissed him as a party or dismissed the underlying petition. The trial court's subsequent exclusion of Mungo for lack of standing did not amount to his dismissal from the hearing, after which the trial court terminated "the parental rights of the father of" L.D.B. We conclude that the trial court erred in refusing to consider evidence and arguments from Mungo.
Mungo also argues that there was insufficient evidence to support the court's findings of fact and conclusions of law, as no evidence was presented at the hearing and the test results were not entered into evidence. Again, we agree. There must be competent evidence to support the court's findings of fact and conclusions of law. Shear v. Stevens Building Co., 107 N.C.App. 154, 418 S.E.2d 841 (1992). The court found that Mungo was not the father based solely on the results of the paternity test, which the judge had seen before the hearing when the agency's counsel sent a copy of the results to the court. A copy of the test results was in the court file, but the original was missing and neither the results, nor any other evidence, were introduced. Mungo's attorney informed the trial court that "both [Mungo] and the biological mother are convinced that he's the father and the tests don't bear that out, so something is askewed [sic] from their point of view," and that he intended to call witnesses regarding the circumstances of the paternity test. However, as discussed, the court refused to take this evidence and based its findings solely on the paternity test results the judge had viewed before the hearing. A fact-finder's observation "does not constitute evidence and cannot provide the basis for any finding of fact." Carrington v. Housing Authority of the City of Durham, 54 N.C.App. 158, 160, 282 S.E.2d 541, 542 (1981) (citing Weidle v. Cloverdale Ford, 50 N.C.App. 555, 557, 274 S.E.2d 263, 264 (1981)). As Mungo correctly asserts, without any evidence, the court is unable to make proper findings of fact or conclusions of law based solely on a copy of the test results viewed prior to the hearing.
Both parties devote considerable argument to N.C. Gen.Stat. § 8-50.1(b1) (2003) in their respective briefs. G.S. § 8-50.1(b1) provides for admission of paternity tests in civil actions. In relevant part, it states:
In the trial of any civil action in which the question of parentage arises, the court shall, on motion of a party, order the mother, the child, and the alleged father-defendant to submit to one or more blood or genetic marker tests .... Verified documentary evidence of the chain of custody of the blood specimens obtained pursuant to this subsection shall be competent evidence to establish the chain of custody. Any party objecting to or contesting the procedures or results of the blood or genetic marker tests shall file with the court written objections setting forth the basis for the objections and shall serve copies thereof upon all other parties not less than 10 days prior to any hearing at which the results may be introduced into evidence.... If no objections are filed within the time and manner prescribed, the test results are admissible as evidence of paternity without the need for foundation testimony or other proof of authenticity or *291 accuracy. The results of the blood or genetic marker tests shall have the following effect:
(1) If the court finds that the conclusion of all the experts, as disclosed by the evidence based upon the test, is that the probability of the alleged parent's parentage is less than eighty-five percent (85%), the alleged parent is presumed not to be the parent and the evidence shall be admitted. This presumption may be rebutted only by clear, cogent, and convincing evidence. G.S. § 8-50.1(b1).
Here, it is undisputed that Mungo was ordered to submit to the DNA test and thus the test falls within the ambit of this statute. Mungo contends that the test did not meet the statutory requirements because there was no verified documentary evidence of the chain of custody. He also argues that he did not have enough time before the hearing to file a written objection. The agency contends that the test results did meet the statutory requirements and could thus not be challenged by Mungo at the hearing, as he had not filed a written objection to the test results prior to the trial. Without deciding the merits of these arguments, we conclude that even if the document were properly verified and even if Mungo failed to file written objections before the hearing, the trial court still erred by precluding Mungo from participating, since the presumption created by the test is, according to this statute, rebuttable. G.S. § 8-50.1(b1)(1).
First, the statute clearly states that if the test meets the statutory requirements, the results are merely "admissible as evidence of paternity without the need for foundation testimony or other proof of authenticity or accuracy." G.S. § 8-50.1(b1)(emphasis added). The test results, while admissible, were never actually offered or received into evidence. Admissible is not the same as admitted into evidence.
Furthermore, even if the test results met the statutory requirements and had been properly admitted into evidence, they only create a rebuttable presumption. A rebuttable presumption is not "an irrebuttable conclusion of law. It is a mere inference of fact." In Re: Will of Wall, 223 N.C. 591, 595, 27 S.E.2d 728, 731 (1943) (internal quotes and citation omitted). A rebuttable presumption has
no weight as evidence. It serves to establish a prima facie case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, without giving any evidential weight to the presumption itself. Id. at 596, 27 S.E.2d at 731. (emphasis added; internal citations and quotes omitted).
As discussed, the court refused to give Mungo an opportunity to rebut the presumption. The agency argues that because the test showed a zero percent probability of Mungo's paternity, no evidence could have been presented which would rebut the presumption by "clear, cogent, and convincing evidence," as required by the statute. G.S. § 8-50.1(b1)(1). However, this Court has affirmed cases in which testimony overcame the paternity test results. For example, this Court held that a putative father's testimony that he did not know the mother nor recall meeting her was sufficient to establish that he was not the father, even though a paternity test showed a 99.96% probability of parentage. Nash County Dep't of Soc. Servs. v. Beamon, 126 N.C.App. 536, 538, 485 S.E.2d 851, 852 (1997) (holding that testimony rebutted the presumption created by G.S. § 8-50.1(b1)(4), which creates a presumption of parenthood where the paternity test shows a probability of parentage 97% or greater that "may be rebutted only by clear, cogent, and convincing evidence"). Thus, the court erred in not allowing Mungo to attempt to rebut the statutory presumption created by the test results.
Respondent Mungo also argues that the trial court erred by entering a TPR order because there was no service on any prospective father other than him, and he was not allowed to participate in the TPR hearing. Petitioner asserts that Mungo lacks standing to raise this argument. We agree that Mungo lacks standing to raise any issue regarding the court's lack of service on a potential John Doe father, but he has properly raised the issue regarding the court's *292 failure to allow him to participate in the TPR hearing.
Although the court first found that Mungo was not the father, it then proceeded to hold the TPR hearing, but denied Mungo the opportunity to participate. The TPR hearing could only have concerned termination of Mungo's parental rights, as the entire proceeding was based on a petition to terminate his rights. Although the court concluded as law that "the father has been properly served," Mungo was the only potential father served. The court had no authority to proceed as to any potential father except for Mungo; thus, the court improperly excluded Mungo from the TPR hearing about his parental rights.
For the above reasons, we reverse the trial court's orders regarding paternity and termination of parental rights.
Reversed.
Chief Judge MARTIN and Judge TIMMONS-GOODSON concur.