DILLON, Judge, concurring.
I fully concur in the majority opinion.
In this Chapter 50 custody case between two natural parents, the trial court granted sole legal and physical custody of the child to Mother, and further prohibited Father from any visitation with and access to information about the child. The trial court based its order on its determination that this arrangement was in the best interest of the child. And there was evidence to support this order.
The main disagreement between the majority and the dissent concerns whether the trial court used the correct standard in weighing the evidence:
The majority states that the trial court correctly applied the "preponderance of the evidence" standard.
The dissent, however, relies on two cases from our Court which suggest that where a trial court orders that one parent is not allowed any custody, visitation, or the right to information in a Chapter 50 custody dispute with the other parent, the trial court must use a heightened "clear, cogent, and convincing" standard. Routten v. Routten , --- N.C. App. ----, ----, 822 S.E.2d 436, 444 (2018) ; Moore v. Moore , 160 N.C. App. 569, 573-74, 587 S.E.2d 74, 76 (2003).
I agree with the majority that our law does not require this heightened standard in a Chapter 50 custody dispute between parents. See Owenby v. Young , 357 N.C. 142, 145, 579 S.E.2d 264, 267 (2003) (holding that making a determination based on the heightened standard "is irrelevant in a [Chapter 50] custody proceeding between two natural parents[.]").
The dissent correctly notes that the Due Process Clause protects the fundamental right of natural and adoptive parents to make decisions concerning the care, custody, and control of their children. And *404 it is well-settled that where a parent's rights are completely stripped in a Chapter 7B termination case - whether in an action brought by the other parent or by a third party - the trial court must apply the heightened "clear, cogent, and convincing" standard. In re Oghenekevebe , 123 N.C. App. 434, 437, 473 S.E.2d 393, 396 (1996). It is also well-settled that this heightened standard must be applied in a Chapter 50 custody action where a parent's rights are abrogated in favor of a non-parent; e.g. , granting visitation rights to a grandparent, because such orders affect the "constitutionally protected paramount right of parents" to their children. Owenby , 357 N.C. at 145, 579 S.E.2d at 266.
However, with the exception of the two cases cited by our dissenting colleague, our courts have uniformly recognized that, in a Chapter 50 custody dispute between two parents, a trial court may abrogate a parent's right to care, custody, and control in favor of the other parent without using the heightened "clear, cogent, and convincing" standard. Owenby , 357 N.C. at 145, 579 S.E.2d at 267. Indeed, every Chapter 50 order which does not grant equal, joint custody to both parents effectively is taking away some of the care, custody, and control rights previously *551 enjoyed by one of the parents.[6] For example, a Chapter 50 order may limit one parent's rights to supervised visitation, based on findings that the parent is not presently fit for unsupervised visits.
But a Chapter 50 custody order dividing the rights between two parents - no matter the severity - is never as invasive of a parent's fundamental right to care, custody, and control as a Chapter 7B termination order. Under this Chapter 50 order, Father retains the ability and right to move for reinstatement of some or all of his previously-enjoyed rights by showing that he has changed his ways.[7] But if his rights were to be *405 terminated under Chapter 7B, Father would have no opportunity to do so, which is why a heightened standard is required in such cases.
BERGER, Judge, dissenting in separate opinion.
Because clarity is needed in this area of the law as it relates to custody disputes between parents when the trial court denies one parent all visitation and contact, I respectfully dissent.
Based upon the evidence in the record and the findings of the trial court, Defendant-father clearly has issues that he needs to address. Because of these issues, the trial court concluded as a matter of law that the father is "not a fit and proper person to have any visitation or contact with the minor child ... [and] [t]his order is in the best interests and welfare of the minor child." The trial court, in addition to denying Defendant-father any physical custody or contact with the minor child, denied Defendant-father all rights and responsibilities of parentage. The trial court precluded Defendant-father from obtaining "any information concerning the minor child," (emphasis added) from teachers, medical professionals, third-party caregivers, and other similar individuals. Upon entry of this order, there existed the very real possibility that Defendant-father would not see his daughter again and would never know anything about her. The practical effect of this custody order, which the majority admits is "unusual," is the termination of Defendant-father's parental rights.
This order is far different from the situation in which visitation is denied. Here, all contact is prohibited, as is the Defendant-father's ability to obtain any information about the child. This may be the correct result, but there is case law which requires a higher burden of proof before a parent can be deemed "unfit" and thereafter cut off entirely from their biological child. This Court has previously held that when a custody order is the functional equivalent of a termination of parental rights, a parent must prove the other parent's unfitness by clear, cogent, and convincing evidence. Moore v. Moore , 160 N.C. App. 569, 573, 587 S.E.2d 74, 76 (2003).
In Moore v. Moore , the biological parents engaged in a custody dispute over their minor child. The father filed a motion to reinstate visitation after his visitation rights had been suspended pending an investigation. The trial court determined that it was in the best interests of the minor child that the order suspending visitation remain in effect. This Court stated that, because the practical effect of the trial court's *406 order was the termination of father's parental rights, the standard of proof required in termination proceedings was to be applied. *552 Moore , 160 N.C. App. at 573, 587 S.E.2d at 76. Moore also noted that
The "Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49, 57 (2000). "[A]bsent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to custody, care, and control of their children must prevail." Petersen v. Rogers, 337 N.C. 397, 403-404, 445 S.E.2d 901, 905 (1994). N.C. Gen. Stat. § 50-13.5(i) states:
[T]he trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.
N.C. Gen. Stat. § 50-13.5(i) (2001). North Carolina courts have held that unless the child's welfare would be jeopardized, courts generally should be reluctant to deny all visitation rights to the divorced parent of a child of tender age. Swicegood v. Swicegood, 270 N.C. 278, 154 S.E.2d 324 (1967). "In the absence of extraordinary circumstances, a parent should not be denied the right of visitation." In re Custody of Stancil, 10 N.C. App. 545, 551, 179 S.E.2d 844, 849 (1971), (quoting Willey v. Willey, 253 Iowa 1294, 115 N.W.2d 833 (1962) ). North Carolina case law also states that when severe restrictions are placed on the right of visitation, N.C. Gen. Stat. § 50-13.5(i) requires the trial judge to make findings of fact supported by competent evidence of unfitness of the parent or the judge must find that the restrictions are in the best interest of the child. Falls v. Falls, 52 N.C. App. 203, 208, 278 S.E.2d 546, 551 (1981) ; see also Johnson v. Johnson, 45 N.C. App. 644, 263 S.E.2d 822 (1980).
It is presumed that fit parents act in the best interest of their children. Troxel, 530 U.S. at 69, 120 S.Ct. 2054, 147 L.Ed.2d at 59. A parent's right to a relationship with his child is constitutionally protected. See *407 Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511, 519 (1978). Once conduct that is inconsistent with a parent's protected status is proven, the "best interest of the child" test is applied. Price v. Howard, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997). Without proof of inconsistent conduct, the "best interest" test does not apply and the trial court is limited to finding that the natural parent is unfit in order to prohibit all visitation or contact with his or her child.
The burden of proof rests upon the person seeking to show by clear, cogent, and convincing evidence the unfitness of a natural parent to overcome his constitutionally protected rights. N.C. Gen. Stat. § 7B-1111(b) (2001). Here, in effect, the trial court terminated plaintiff's right to visitation and any contact with his daughter without terminating his obligations as a parent. The proper evidentiary standard of proof in termination of parental rights proceedings is clear and convincing evidence. In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984). In termination proceedings "the burden ... shall be upon the petitioner or movant to prove the facts justifying such termination by clear and convincing evidence." N.C. Gen. Stat. § 7B-1111(b).
Plaintiff was prohibited from all visitation rights or any contact whatsoever with his child. To sustain this total prohibition of visitation or contact, defendant must prove plaintiff's unfitness. The trial court did not find the plaintiff to be an unfit parent based upon clear, cogent, and convincing evidence.
Moore , 160 N.C. App. at 572-74, 587 S.E.2d at 76-77.
Here, the trial court effectively terminated Defendant-father's parental rights without findings by clear, cogent, and convincing evidence that Defendant-father was an unfit parent. Under Moore , the trial court's order is insufficient.

And it could be argued that even Chapter 50 orders that grant joint custody abrogate some of the rights of each parent, by giving exclusive custody to each parent during different periods to the exclusion of the other parent.

I believe that the "best interest of the child" standard applied in Chapter 50 custody cases is in harmony with protecting the Due Process rights of each parent to be involved with his child. Specifically, I believe that there is a strong presumption that it is in the best interest of any child to have a relationship with each parent, though, of course, this presumption can be overcome under the right facts: A trial judge should view the best interest of the child issue at least partially through a "constitutional lens" of considering the right of each parent to remain involved, as such involvement is presumptively in the child's best interest. So, in this case, if Father truly changes his ways and his rights have not otherwise been terminated under Chapter 7B, there would be a strong argument that the trial court would be de facto terminating Father's rights if it refused to allow Father some involvement in the life of his child, even if the child may be thriving at that time. But such is not the case currently in this matter.