IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-499

No. COA21-591

Filed 19 July 2022

Forsyth County, No. 17 CVD 5352

JAMES R. WEBB and DOTTIE WEBB, Plaintiffs,

v.

JERRY REODD JARVIS and TINA PEATROSS, Defendants,

v.

ANDREA JARVIS, Intervenor.


Appeal by Defendant-Appellant from order entered 5 February 2021 by Judge Lawrence J. Fine in Forsyth County District Court. Heard in the Court of Appeals 27 April 2022.

> *Morrow, Porter, Vermitsky and Taylor, PLLC, by Erin Woodrum, for Defendant-Appellant.*
>
> *Craige Jenkins Liipfert & Walker LLP, by H. David Niblock and Edgar Santiago, for Defendant-Appellee.*


GRIFFIN, Judge.

¶ 1    Defendant-Appellant Jerry Reodd Jarvis appeals from an order denying Jarvis's motion to dismiss and concluding that Peatross has standing to bring her claim in the child custody dispute. On appeal, Jarvis argues the trial court erred in

determining that Peatross has standing to bring her child custody claim because he did not act inconsistent with his constitutional right to parent his child. After review, we affirm the trial court's order.

## I. Factual and Procedural Background

¶ 2 On 28 July 2010, Sean[1] was born to Jarvis and Sarah Webb. Jarvis and Webb never married, and shared custody of Sean pursuant to a parenting agreement. On 20 December 2015, Webb died from cervical cancer. At the time of her death, Webb was living with her mother and her sister, Tina Peatross. Before Webb's death, she told Peatross "that it was her wish that [Sean] live [with] [Peatross] and still see [Jarvis] and his mom."

¶ 3 On 4 January 2016, Forsyth County Superior Court, with Jarvis's consent, appointed Peatross as Sean's Guardian. Jarvis considered Peatross's appointment to be temporary, and in Sean's best interest "in that it allowed [Sean] to grieve the death of his mother and to continue living in the home of Peatross instead of uprooting him during a difficult time." At this time, Jarvis was involved in the illegal "drug scene" and "between relationships[.]" Since Peatross's appointment, Sean has resided with the Peatross family and, for a majority of the time, maintained regular contact with Jarvis.

---

[1] We use a pseudonym for protection of the minor child and ease of reading. *See* N.C. R. App. P. 42(b).

¶ 4    In April 2016, Jarvis was arrested in Mecklenburg County and charged with felony fleeing to elude arrest and attaining habitual felon status. Jarvis was subsequently indicted on both charges. Jarvis later testified that he was aware that if he was "apprehended and convicted of [these] crimes, that [he] would serve [an] active sentence[,]" and that he did commit these crimes despite this knowledge. These charges were not disclosed to Peatross at this time. On 28 October 2017, Jarvis was arrested and charged with trafficking cocaine. While Sean was not in Jarvis's presence at the time of his October 2017 arrest, Jarvis was exercising custody of Sean that weekend. Jarvis was convicted and sentenced to an active sentence of 85 to 114 months for the felony fleeing to elude arrest and habitual felon charges on 1 November 2017. Then, on 14 May 2019, Jarvis was convicted of attempted trafficking cocaine and sentenced to an active sentence of 33 to 47 months to run concurrent with his prior convictions. After learning that Jarvis was imprisoned in November 2017, Peatross did not allow contact between Jarvis and Sean, until her guardianship was set aside in October 2019.

¶ 5    This action began prior to Jarvis's October 2017 arrest when Sean's maternal grandfather and step-grandmother (together, "Plaintiffs") sought visitation with Sean and named Jarvis and Peatross as defendants. Peatross later filed an amended answer as well as a counterclaim against Plaintiffs and a crossclaim against Jarvis seeking custody of Sean. On 27 February 2020, Jarvis filed a motion to dismiss

"claims asserted by the Plaintiffs as well as the claim for custody of [Sean] asserted by Peatross."

¶ 6   The trial court held a hearing to determine whether Peatross had standing to seek custody of Sean on 16 November 2020. On 5 February 2021, the trial court entered an order concluding that "Jarvis ha[d] acted inconsistently with his constitutionally protected rights as the biological father of [Sean] and thereby ha[d] waived such constitutionally protected rights as a parent." Accordingly, the trial court denied Jarvis's motion to dismiss Peatross's claim because it determined that "Peatross has standing to seek custody of [Sean]." Jarvis's motion to dismiss Plaintiffs' claims was granted. Jarvis timely appeals.

## II.   Analysis

¶ 7   On appeal, Jarvis argues that the trial court erred in denying his motion to dismiss Peatross's custody claim and determining that he acted inconsistent with his constitutionally protected right, such that Peatross has standing to bring her claim for custody of Sean. Jarvis also challenges Finding of Fact #27, which states:

> 27. Regardless of Jarvis'[s] intention for the arrangement to be temporary, Jarvis took advantage of the custodial arrangement and abdicated his parental decision-making responsibilities in favor of Peatross from 2015-2017. He took no action to have the Guardianship set aside prior to his arrest. The custodial relationship between Peatross and [Sean] became permanent when Jarvis was incarcerated on October 28, 2017, due to his criminal acts.

¶ 8        "[A] trial court's legal conclusion that a parent acted inconsistently with his constitutionally protected status as a parent is reviewed de novo to determine whether the findings of fact cumulatively support the conclusion and whether the conclusion is supported by clear and convincing evidence." *In re I.K.*, 377 N.C. 417, 2021-NCSC-60, ¶ 20 (citing *Boseman v. Jarrell*, 364 N.C. 537, 549, 704 S.E.2d 494, 502–03 (2010); *Adams v. Tessener*, 354 N.C. 57, 65–66, 550 S.E.2d 499, 504 (2001)). Unchallenged findings and findings supported by competent evidence are conclusive on appeal. *I.K.*, 2021-NCSC-60, ¶ 20 (citing *In re L.R.L.B.*, 377 N.C. 311, 2021-NCSC-49, ¶ 11).

**A.  Finding of Fact #27**

¶ 9        With regard to Finding of Fact #27, Jarvis contends that "[t]he record is devoid of evidence to support this finding[,]" but concedes that "there is evidentiary support for the fact that [Jarvis] did not take action to set aside the Guardianship prior to his arrest[.]"  Since it is conceded that there is evidentiary support for this part of the finding, this part of the finding is binding on appeal, and we focus our attention to the remaining parts of the finding.  The evidence presented in support of the findings preceding Finding of Fact #27 could support the finding that, based on Jarvis's actions, he did take advantage of the arrangement and abdicated the majority of his parental responsibility to Peatross.  The evidence tends to show, and Jarvis admits, that Peatross has been Sean's primary caregiver and was appointed guardian to make

decisions regarding Sean's health care and education—decisions that are generally reserved for natural parents. Additionally, Jarvis admitted at the hearing that he "made a conscious decision to basically give the authority to [Peatross] to look after [Sean][.]"

¶ 10 The final part of the finding regarding the permanency of the custodial arrangement may be inferred from the fact that at the time of Jarvis's imprisonment, the only two individuals that had a custodial relationship with Sean were Peatross and Jarvis. When Jarvis was imprisoned, this left Peatross as the only person who had an existing custodial relationship with Sean such that, at that time, the custodial relationship between Peatross and Sean was permanent until a different custody arrangement was determined. We therefore hold that there was evidence to support Finding of Fact #27, and it is thus binding on appeal.

**B. Standing**

¶ 11 Under North Carolina law, "[a]ny parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child." N.C. Gen. Stat. § 50-13.1(a) (2021). If a party has standing in the child custody action, then the court will make the custody determination based on the "best interest of the child" standard. *See* N.C. Gen. Stat. § 50-13.2(a) (2021) ("An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency,

organization or institution as will best promote the interest and welfare of the child.").

¶ 12        However, while North Carolina law identifies parties that may have standing in a child custody proceeding, there are federal and state constitutional limitations "on the application of § 50-13.1." *Mason v. Dwinnell*, 190 N.C. App. 209, 219, 660 S.E.2d 58, 65 (2008). In child custody proceedings where natural parents are involved, such as in the case *sub judice*, "[t]he interest implicated . . . is a natural parent's liberty interest in the companionship, custody, care, and control of his or her child . . . [that] [t]he United States Supreme Court has recognized . . . is protected by the Constitution." *Price v. Howard*, 346 N.C. 68, 74, 484 S.E.2d 528, 531 (1997); *see Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (citing *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'")); *see also Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."). "So long as a parent has this paramount interest in the custody of his or her children, a custody dispute with a nonparent regarding those children may not be determined by the application of the 'best interest of the child' standard." *Boseman*, 364 N.C. at 548, 704 S.E.2d at 502 (citation omitted).

¶ 13        However, this paramount status is not absolute.  Our state Supreme Court has held that where a parent acts inconsistent with the presumption "that he or she will act in the best interest of the child[,]" that "parent may no longer enjoy a paramount status[.]"  *See Price*, 346 N.C. at 79, 484 S.E.2d at 534.  Accordingly, in a custody dispute between a parent and a nonparent where the parent has acted inconsistent with this presumption, the nonparent party would have standing, and applying the "best interest of the child" standard would not offend the Due Process Clause.  *Id.*; *see also Adams*, 354 N.C. at 62, 550 S.E.2d at 503 ("As a result, the government may take a child away from his or her natural parent only upon a showing that the parent is unfit to have custody . . . or where the parent's conduct is inconsistent with his or her constitutionally protected status[.]" (citations omitted)).

¶ 14        "[T]here is no bright-line test to determine whether a parent's conduct amounts to action inconsistent with his constitutionally protected status."  *I.K.*, 2021-NCSC-60, ¶ 34 (citing *Boseman*, 364 N.C. at 549, 704 S.E.2d 494).  "[E]vidence of a parent's conduct should be viewed cumulatively."  *Id.* (internal quotation marks omitted) (citing *Owenby v. Young*, 357 N.C. 142, 147, 579 S.E.2d 264, 267 (2003)).

> When examining a legal parent's conduct to determine whether it is inconsistent with his or her constitutionally-protected status, the focus is not on whether the conduct consists of "good acts" or "bad acts." Rather, the gravamen of "inconsistent acts" is the volitional acts of the legal parent that relinquish otherwise exclusive parental authority to a third party.

*Mason*, 190 N.C. App. at 228, 660 S.E.2d at 70 (citation omitted).

¶ 15        Here, the trial court made multiple unchallenged findings relating to Jarvis's volitional acts to conclude that he acted in a manner inconsistent with his constitutionally protected status. The trial court found that Jarvis consented to Peatross being appointed Sean's guardian. While the trial court also made a finding that Jarvis consenting to Peatross being Sean's guardian was not, in isolation, an act inconsistent with this right, this act considered with his other acts detailed in the court's other findings support the court's conclusion. Part of the reason that Peatross decided to be Sean's guardian was so she, the nonparent, could make decisions regarding Sean's health care and education. Sean has at all times resided with Peatross since she was appointed guardian. While the court did make a finding that Jarvis, prior to being incarcerated, maintained regular contact with Sean, Jarvis conceded that Peatross has been Sean's primary caregiver since 24 December 2015.

¶ 16        Further, Jarvis's volitional acts which led to his current prison sentence support the court's conclusion. Jarvis was charged with, and later convicted of, felony fleeing to elude arrest, and was aware that this conviction would qualify him as a habitual felon. *See* N.C. Gen. Stat. § 14-7.1(a) (2021) ("Any person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof is declared to be an habitual felon and may be charged as a status offender pursuant to this Article."); *see also* N.C. Gen.

Stat. § 14-7.6 (2021) ("When an habitual felon . . . commits any felony  . . . the felon must, upon conviction or plea of guilty . . .  be sentenced at a felony class level that is four classes higher than the principal felony for which the person was convicted[.]").

Jarvis was aware that if he was convicted of these crimes it would result in his imprisonment and his inability to exercise physical custody of Sean.  Yet, he proceeded to engage in conduct leading to him being, on one occasion, indicted as a habitual felon and convicted of felony fleeing to elude arrest, as well as being convicted of trafficking cocaine on a later occasion.  Based on the findings establishing the degree of Jarvis's voluntary relinquishment of parental authority to Peatross and his repeated criminal convictions, we conclude that there was clear and convincing evidence to support the trial court's determination that, based on the totality of his actions, Jarvis acted inconsistent with his constitutional right to parent his child.

## III.    Conclusion

We hold that there was clear and convincing evidence to support the trial court's determination that Jarvis acted inconsistently with his constitutionally protected parental rights, such that Peatross has standing.  We therefore affirm the trial court's order.

AFFIRMED.

Judges DIETZ and JACKSON concur.