An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-1090

Filed 4 February 2026

Randolph County, No. 23CVD000965-750

JEREMIAH WATTS, Plaintiff,

v.

TAWAME WATTS, Defendant.

Appeal by defendant from judgment entered 11 July 2024 by Judge Chevonne Wallace in Randolph County District Court. Heard in the Court of Appeals 25 September 2025.

*Bullock Clay & Furr, PLLC by Jessica S. Bullock for defendant-appellant.*

*Spidell Family Law, by Megan E. Spidell, for plaintiff-appellee.*

DILLON, Chief Judge.

## I. Background

Defendant Tawame Watts ("Mother") and Plaintiff Jeremiah Watts ("Father") married in April 2018. They separated in March 2023 after Father discovered Mother was having an affair. There were two children born to the marriage: S.W., born two months after the couple was married, and T.W., born shortly after they separated.

Following their separation, the parties voluntarily entered a memorandum of judgment agreeing to split custody of S.W.

Shortly thereafter, Mother reported Father to the Department of Social Services ("DSS") on two separate occasions because she was concerned about potential abuse. On 10 May 2023, Father filed a complaint for custody for both minor children. He agreed not to contact S.W. until the DSS investigation was complete. S.W. gave multiple conflicting statements to investigators during the interviews. During the investigation process, it was recommended that S.W. begin therapy. S.W. met with a recommended therapist for four sessions before the therapist recommended that she find a new therapist. After multiple DSS interviews and two Child Medical Evaluations, DSS closed the investigation.

In October 2023, S.W. began therapy with a second therapist, Lambert. Lambert diagnosed S.W. with "sexual abuse confirmed" and "PTSD suspected." On 11 July 2024, the trial court entered an Order for Permanent Child Custody, concluding that both parents were both fit to have legal custody of both minor children and they are both fit to have physical custody of both minor children. However, it is not in the best interest of S.W. or Father to allow Father physical custody or unsupervised visitations with S.W. because "whether or not sexual abuse by [Father] actually occurred, minor child, [S.W.], believes she was sexually assaulted by [Father]" and out of "fear of further accusations" against Father. Mother appealed.

II.    Analysis

- 2 -

Defendant raises three issues on appeal. We address each in turn.

A. Insufficient findings of fact

First, Mother argues the trial court erred by granting Father joint legal custody of both minor children and joint physical custody of T.W. because the trial court failed to make sufficient findings of fact to support these conclusions of law and because the trial court failed to make findings of fact to resolve the primary issue of sexual abuse raised by evidence.

"Our trial courts are vested with broad discretion in child custody matters." *Shipman v. Shipman*, 357 N.C. 471, 474 (2003). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason[.]" *White v. White*, 312 N.C. 770, 777 (1985). On appeal, we review a trial court's findings of facts to determine if they are supported by competent evidence. *Owenby v. Young*, 357 N.C. 142, 147 (2003). "[T]he trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Id.* (citation omitted). "Whether the trial court's findings of fact support its conclusions of law is reviewable de novo." *Deanes v. Deanes*, 294 N.C. App. 29, 35 (2024).

Here, while there are ample findings of fact, there are no findings to resolve the issues of whether S.W. has experienced sexual abuse. "Although a custody order need not and should not include findings as to each piece of evidence presented at trial, it must resolve the material, disputed issues raised by evidence." *Carpenter v.*

- 3 -

*Carpenter*, 225 N.C. App. 269, 273 (2013).

> [A] custody order is fatally defective where it fails to make detailed findings of fact from which an appellate court can determine that the order is in the best interest of the child, and custody orders are routinely vacated where the "findings of fact" consist of mere conclusory statements that the party being awarded custody is a fit and proper person to have custody and that it will be in the best interest of the child to award custody to that person. A custody order will also be vacated where the findings of fact are too meager to support the award.

*Dixon v. Dixon*, 67 N.C. App. 73, 76-77 (1984).

In this case, the trial court made numerous findings of fact related to the best interest of the child including:

> [Finding of fact 8]: No domestic violence ever occurred between [Father and Mother]. [Father] has never assaulted, attempted to assault, or threatened [Mother].
>
> [Finding of fact 13]: Father filed a Complaint for Custody on May 10, 2023, of both [S.W.] and newborn child, [T.W.]
>
> [Finding of fact 14]: From March of 2021 until the parties separated in March of 2023, Father was the primary caregiver for minor child, [S.W.] . . . [Father] would get said child ready in the morning and take her to daycare or preschool on his way to work. [Mother] picked up the child from daycare and took care of the child until [Father] returned from work.
>
> [Finding of fact 15]: In the afternoons and at nighttime, [Father] typically had most of the responsibilities for bedtime and bath time. Sometimes, paternal grandmother and/or paternal great-grandmother would help with childcare by picking up minor child, [S.W.], from the daycare.
>
> [Finding of fact 19]: The first child medical evaluation

(hereinafter referred to as "CME") was completed on minor child, [S.W.], based on [Mother's] allegations of sexual assault. There was no physical signs or evidence of sexual abuse. Moreover, [S.W.] did not disclose any sexual abuse. The medical providers did note there were concerns about the child being coached.

[Finding of fact 20]: During the initial investigation into both physical abuse by [Mother] and sexual abuse by [Father], minor child, [S.W.], did not disclose sexual abuse to anyone. Law enforcement declined charging [Father, and Mother] admitted later that the detective felt she had coached the child. DSS did not take out the petition and closed the case.

[Finding of fact 26]: During another interview with DSS, the minor child, [S.W.], told the interviewer that [Father] had touched her. Then a few moments late[r]. [S.W.] denied anyone had ever touched her. When the DSS worker reminded [S.W.] that she had just said her Father had touched her, [S.W.]'s response was "oh yeah." The DSS worker believed [her] response was because she forgot what she was "supposed to say."

[Finding of fact 27]: Minor child, [S.W.], had a second CME . . . on July 18, 2023. There were no physical findings of sexual abuse. Furthermore, the child made no disclosures about sexual assault except that she did say her, "daddy touched her private parts like mommy does" and that it occurred multiple times. Coaching was listed as a concern on the evaluation. . . . [S.W.] denied anyone had ever touched her butt and denied she'd ever seen [Father's] wiener. When asked if [Mother] touched her, the minor child spread her legs and pointed to her private area.

[Finding of fact 40]: [Father] currently lives with his fiancé. . . and her 11-year-old daughter. [Father] has a bed for [S.W.] and a place for [T.W.] to sleep as well. . . .

The trial court then concluded:

[Conclusion of law 2]: [Both parents] are fit and proper

persons to have legal custody of the minor children . . . and it's in the children's best interest for them to have joint legal custody.

[Conclusion of law 4]: [Both parents] are fit and proper persons to have physical custody of minor child, [S.W.]. It is not in the best interest for [Father] to exercise visitation or physical custody of the minor child. . . . Whether or not sexual abuse by [Father] occurred, minor child. . . currently believes she was sexually assaulted by [Father].

[Conclusion of law 5]: It is not in the best interest of [S.W.] or the [Father] in this matter for there to be unsupervised visitations for fear of further accusations, whether founded or not, and putting child through further testing and investigating when she has already been through multiple CMEs, DSS investigations, a law enforcement investigation, and multiple therapists.

These findings of fact, which are used to support the conclusion that Father is fit to share custody of children, did not resolve the disputed issue presented by the evidence—whether the child was sexually abused. Therefore, we vacate the order and remand the matter to the trial court for additional findings of fact, as well as conclusions of law to determine whether the evidence was sufficient for the trial court to find that S.W. suffered from sexual abuse. The trial court must clearly determine whether Mother carried her burden to proffer clear and convincing evidence that Father, in fact, did commit sexual abuse.

## B. Competent evidence

Second, Mother contends there was not competent evidence to support findings of fact numbers 24, 26-33, 35, and 43-46.

Because we are remanding for further proceedings, we decline to reach the second issue on its merits.

## C. Visitation

Finally, Mother contends the trial court erred by delegating the child's therapist the judicial function of determining whether [Father] should have supervised visitations with S.W.

It is well established that a "trial court must set the parameters of visitation and should not leave visitation in the discretion of another person, including a 'treatment team' or therapist." *Matter of J.C.-B.*, 276 N.C. App. 180, 192 (2021).

Here, in the trial court's order, it stated that [Father] may have supervised visitation with S.W. if "(i) The minor child is finished with all trauma focused therapy; (ii) Reunification therapy and/or family therapy has started with [Father] and the minor child; and (iii) The therapist(s) believes it is appropriate for in-person visitation to occur." By allowing the therapist to determine whether [Father] may have supervised visitation, the trial court failed to set parameters for visitation and delegated this judicial function to a third party. We reverse the trial court's order regarding visitation and remand for the trial court to set the parameters of visitation.

## III.    Conclusion

The trial court failed to resolve issues raised by the evidence and failed to exercise its judicial function properly regarding visitation when it allowed a therapist to set visitation rights as she saw fit. On remand, the trial court shall make a

visitation determination and not leave it to the discretion of the therapist, and "[t]he trial court shall adjudicate and resolve conflicts in the evidence and make additional findings of fact to support the conclusions and legal issues in its decree. Whether to take additional evidence upon remand rests within the trial court's discretion." *Hinson v. Hinson*, 268 N.C. App. 187, 197 (2019).

VACATED IN PART AND REMANDED.

Judges ARROWOOD and MURRY concur.

Report per Rule 30(e).