IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1177

 Filed: 7 July 2020

Carteret County, No. 15CVD111

KARLA DUNN and RONALD DUNN, Plaintiffs,

 v.

KEIR COVINGTON and COURTNEY COLE, Defendants,

PATRICIA ANNE SCHWEISTHAL and THOMAS B. SCHWEISTHAL,
Intervenors.

 Appeal by Courtney Cole from an order and judgment entered 29 January 2018

by Judge Peter Mack, Jr. in District Court, Carteret County. Heard in the Court of

Appeals 1 October 2019.

 Michael Lincoln, P.A., by Michael Lincoln, for Plaintiff-Appellees.

 Ward, Smith & Norris, P.A., by Kirby H. Smith, III, for Defendant-Appellant.

 McGEE, Chief Judge.

 Courtney Cole (“Defendant” or “Ms. Cole”) appeals a final order and judgment

awarding full custody of her daughter to Karla Dunn and Ronald Dunn (“Plaintiffs”

or “Dunns”), the child’s paternal grandparents.

 I. Factual and Procedural Background

 Ms. Cole is the mother and Keir Covington (“Mr. Covington”) is the father of

Tracy. Ms. Cole was born in Arizona to Thomas and Patricia Schweisthal (“the
 DUNN V. COVINGTON

 Opinion of the Court

Schweisthals”), who still live there. Ms. Cole met Mr. Covington in 2011 and, on 9

October 2012, she gave birth to Tracy in Phoenix, Arizona. Mr. Covington is the son

of the Dunns, who reside in Emerald Isle, North Carolina.

 Ms. Cole was charged with conspiring to sell firearms without a license in

federal court on 27 August 2013, based on an incident that occurred in 2009. As a

result of the charge, Ms. Cole was fired from her job. Consequently, she lost her house

to foreclosure. While awaiting sentencing, Ms. Cole, Mr. Covington, and Tracy moved

into an extended stay motel for about three weeks or a month because, as Ms. Cole

testified, “[they] didn’t want to sign a lease . . . if [she] was going to be sentenced to

prison.” Ms. Cole was convicted and sentenced to four years of probation, with six

months on house arrest, on 28 March 2014.

 After Ms. Cole was sentenced, she asked her parents, the Schweisthals, if she,

Mr. Covington, and Tracy could move into their home in Arizona. The Schweisthals

agreed Ms. Cole and Tracy could reside with them, but refused to allow Mr. Covington

to do so. Ms. Cole testified she had a conversation with Ms. Dunn about moving to

North Carolina and testified “[the Dunns] offered to . . . help . . . us to get our feet on

the ground . . . .” Mr. Covington testified the Dunns “[o]ffered [him and Ms. Cole] a

place to stay and then they came and helped us move.” Ms. Dunn testified Ms. Cole

and Mr. Covington had moved into the Dunns’ residence in Emerald Isle by May 2014.

 -2-
 DUNN V. COVINGTON

 Opinion of the Court

 Ms. Cole testified that she began looking for a job once she moved to North

Carolina. Ms. Dunn testified Ms. Cole worked cleaning vacation condos for about six

weeks from June to July 2014. Ms. Cole testified that two weeks after moving to

Emerald Isle, she got a job at Emerald Grill, a restaurant on the island. Ms. Cole

testified that, after realizing wages were being withheld unfairly, she began looking

for other employment. She looked for another job and soon started working at

Santorini’s Grill in Swansboro, North Carolina. Ms. Cole stayed at that job from July

to late October 2014. Ms. Dunn testified Ms. Cole also worked at a diner called Mike’s

during this time. Ms. Cole chose to leave food service to seek a more permanent job

in the medical field, her profession, and she testified she got a job at an Urgent Care

in Jacksonville, North Carolina, and started working there around the end of

December 2014. However, after Ms. Cole learned she would have a background

check, she revealed her felony conviction to her employer and was terminated from

that job after working there for about two and a half weeks.

 The Dunns filed a complaint against Ms. Cole and Mr. Covington seeking

custody of Tracy on 29 January 2015. They also moved for and obtained an ex parte

emergency custody order entered the same day. The complaint was served on Ms.

Cole by the Carteret County Sheriff’s Department on 30 January 2015. In the

complaint, the Dunns alleged Ms. Cole was a felon “convicted . . . for selling guns to

Mexican Drug Cartel members”; “is also a drug addict and an alcoholic”; she was

 -3-
 DUNN V. COVINGTON

 Opinion of the Court

taking a list of seven prescribed medications “but not as prescribed for the most part

and supplements them with extra drugs . . .”; she “is not a fit parent, in that she has

been unable and unwilling to be the caretaker of the minor child, and upon

information and belief, she has expressed a desire to terminate her own life”; and she

and Mr. Covington “have not acted, nor are they now acting, consistent with their

Constitutional rights as biological parents, in that they have deferred the care and

support of the minor child to the Plaintiffs.” The Dunns further allege “[they] are

preparing to evict [Ms.] Cole because she has made no effort to become gainfully

employed or to substantially participate in the care of her daughter.” The ex parte

emergency custody order merely incorporated the Dunns’ allegations as findings of

fact.

 Ms. Cole testified she did not learn the Dunns were seeking custody of Tracy

until the complaint and the ex parte emergency custody order were served on her.

Once the custody order was obtained and served, the Dunns asked Ms. Cole to move

out of the house. Ms. Dunn testified Ms. Cole moved out “in the middle of February

[2015]” when the Dunns “asked her to leave.” Ms. Cole, however, testified the Dunns

“didn’t . . . verbally tell [her] . . . themselves’—that she “read it on the paper [(i.e., the

complaint)] that they wanted [her] out.” She testified “as soon as [she] read the

Order . . . [she] was fairly upset about it[,]” and she packed up her things and moved

in with a friend who she had worked with at Santorini’s, who had an extra room in

 -4-
 DUNN V. COVINGTON

 Opinion of the Court

the house where she and her husband lived “on base” in Jacksonville. She soon moved

into an extended stay motel room in Jacksonville with money from jobs she was

working at Golden Corral and Crystal Coast Retina Center.

 A hearing was held on 9 March 2015 before Judge Peter Mack, Jr. on whether

to grant a temporary custody order in the case. The trial court concluded that Ms.

Cole “is an unfit person to have the care, custody and control of the minor child,”

although the court did not specify which facts supported that conclusion, nor did it

indicate the standard of proof by which it found those facts. The trial court awarded

temporary custody of Tracy to the Dunns but did not find that Mr. Covington, Tracy’s

other natural parent, was unfit or had otherwise acted inconsistent with his

constitutionally-protected status.1 The trial court also provided for visitation with

Tracy by Ms. Cole and Mr. Covington, “at such times and under such circumstances

as set out in a consent agreement between ALL the parties.” Ms. Cole filed an answer

to the Dunns’ complaint and a counterclaim seeking temporary and permanent

custody of Tracy on 31 March 2015, to which the Dunns filed a reply on 6 May 2015.

 1 Unlike Ms. Cole, the trial court did not find that Mr. Covington was unfit or acted
inconsistent with his constitutionally-protected status as parent to Tracy in the temporary custody
order. Instead, the trial court concluded in the order that “it is in the best interest of the minor
child . . . to maintain the status quo by continuing the care, custody and control of the minor child with
the Plaintiffs pending further hearings in the matter, and to allow for Defendant Covington’s filing of
responsive pleadings in this matter.” This finding contradicts and supplants the trial court’s prior oral
finding that Mr. Covington was “unfit” because he was “homeless.”

 -5-
 DUNN V. COVINGTON

 Opinion of the Court

 After the ex parte emergency custody order was entered, Ms. Cole visited with

Tracy, attending around seven visitations in a two-month period. After the

temporary custody order was entered, the parties reached a written visitation

schedule they all consented to, as instructed by the trial court, which was filed with

the trial court on 12 May 2015. Ms. Cole abided by the visitation schedule, but on 21

May 2015, the Dunns moved to suspend visitation, alleging that on 19 May 2015, Ms.

Cole “was using a controlled substance and/or a narcotic while having visitation with

the minor child at the Defendant’s room at the extended stay motel at which she

resides in Jacksonville, North Carolina.” The Dunns also alleged that the Onslow

County Department of Social Services (“DSS”) “pursuant to a third party report,

arrived at the Defendant’s room and immediately escorted her to a drug test.” The

trial court entered an order on 11 June 2015 restricting Ms. Cole’s time with Tracy

to supervised visitation for two hours on Wednesdays weekly, basing the order on the

“positive drug test,” “[l]ack of cooperation with Carteret County DSS,” and “[r]ecent

discharge from the Port Program in Jacksonville, N.C.”

 Ms. Cole testified that, in early 2015, she was prescribed prescription opiates

by a dentist to treat pain stemming from a procedure to treat tooth decay and she

developed a dependency on the prescription opioid medication. She said that, at the

end of January 2015, she sought help at Port Human Services (“Port”), a drug

addiction rehabilitation hospital in Jacksonville, that included a Suboxone clinic. She

 -6-
 DUNN V. COVINGTON

 Opinion of the Court

also testified she was attending classes at Port when the complaint in this case was

filed. She testified she did not successfully complete the Suboxone program, but that

she entered the program out of her own volition as “a way to get off prescription

opiates . . . .” On cross-examination of Ms. Dunn, she conceded she had no evidence

that Ms. Cole was abusing drugs at the time the Dunns filed the complaint. Ms. Cole

also testified that, as part of the court-sanctioned visitation schedule, she had to

submit to drug tests once a week, and she complied with those drug tests that showed

she was only taking Adderall to treat Attention Deficit Disorder and the Suboxone

prescribed by Port. At some point during Spring of 2015, Ms. Cole went from

prescription opiates to heroin. DSS responded to a claim that Ms. Cole was using

drugs while visiting with Tracy on 19 May 2015 and DSS required her to take a drug

test. Statements from the trial court judge in the transcript indicate the urinalysis

performed on Ms. Cole came back positive. Ms. Cole testified her drug addiction soon

came to the attention of her parole officer and he had a conversation with her, after

which he had her transferred back to Arizona and charged with a probation violation

for the drug use. Ms. Cole was flown back to Arizona in August 2015.

 In Arizona, Ms. Cole appeared before the district court on her probation

violation and the court agreed to permit her to remain on probation if she completed

treatment at The Meadows drug rehabilitation center in Wickenburg, Arizona. Ms.

Cole subsequently spent forty-five days at The Meadows, successfully completing the

 -7-
 DUNN V. COVINGTON

 Opinion of the Court

rehabilitation program on 11 November 2015. She then moved into Sober Living, a

halfway house in Chandler, Arizona. Ms. Cole testified the halfway house was not

the best environment because some residents were actively using drugs and she

relapsed after about a week there. Ms. Cole moved into a motel where her probation

officer visited her, determined that she had relapsed, and told her she needed to seek

treatment or have her probation revoked.

 Ms. Cole was initially sent to Chandler Valley Hope to detox, but subsequently

entered the rehabilitation program at Desert Cove Rehabilitation Center on 15 or 16

December 2015 and stayed there for seven months, until the end of June 2016,

successfully completing the rehabilitation program. Ms. Cole testified she had

maintained her sobriety after graduating from the Desert Cove program and had

been sober for eighteen months as of 13 June 2017.

 After the trial court entered its 11 June 2015 order modifying Ms. Cole’s

visitation, Ms. Cole’s parents, the Schweisthals, moved to intervene in the case on 12

June 2015. They also filed an answer and counterclaim seeking custody of Tracy.

The trial court granted the Schweisthals’ motion to intervene on 20 August 2015 nunc

pro tunc for 12 May 2015. On 5 October 2015, the Dunns moved to dismiss the

Schewisthals’ counterclaim for failure to state a claim upon which relief can be

granted and moved for appropriate relief for the trial court “to correct the ‘nunc pro

 -8-
 DUNN V. COVINGTON

 Opinion of the Court

tunc’ date from May 12, 2015 to June 19, 2015 on the Order Allowing Intervention.”

The Dunns also replied to the Schweisthals’ answer and counterclaim.

 The Schweisthals filed an emergency motion for visitation on 9 November

2015, after Ms. Cole had been required to returned to Arizona and just prior to her

successful graduation from the rehabilitation program at The Meadows. The trial

court issued an order on 27 April 2016 holding the Schweisthal’s motion in abeyance

pending the appointment of and investigation by a guardian ad litem, Missy

Blackerby (“the guardian ad litem”). The trial court entered an order setting a

consent visitation schedule on 12 August 2016. In addition to telephone, FaceTime,

or Skype contacts three times a week, the order provided for trips for Tracy to visit

the Intervenors in Arizona in October 2016, December 2016, April 2017, and July

2017, as well as visitation any time the Schweisthals would be in North Carolina,

provided they gave Plaintiffs thirty days advance notice. The visitation order also

provided Ms. Cole five supervised telephone visits with Tracy per week, and that,

after the fifth visit, if the supervisor determines they were appropriate, Ms. Cole

could move to unsupervised telephone visits. After review of the supervisor’s report

by the guardian ad litem and Dr. Amy James (“Dr. James”), a counselor appointed

for Tracy, Ms. Cole could move to supervised in-person visitation.

 The Dunns took Tracy to Arizona to visit the Schweisthals for the agreed-upon

October 2016 visitation, but the Dunns moved to suspend visitation on 8 December

 -9-
 DUNN V. COVINGTON

 Opinion of the Court

2016. The trial court entered an ex parte order suspending the Schweisthals’

visitation, adopting the allegations in the Plaintiffs’ motion as findings of fact,

including an allegation made by the guardian ad litem and the Dunns that the

Schweisthals had retained an attorney and, on the December 2016 visit, intended to

prevent Tracy from returning home and obtain an ex parte custody order from an

Arizona court. However, in the order, the trial court noted the order “in no way

adversely affects [Ms. Cole] in her future phone visitations and eventual visitation.”

 The Dunns moved to limit electronic communications between the

Schweisthals and Tracy on 26 March 2017. Ms. Cole moved for review by the court

and to expand her visitation on 12 April 2017. In the motion, Ms. Cole argued that,

although she had complied with every requirement of the agreed-to visitation

schedule, the report of her supervisor had not been accepted. The trial court found

in an order regarding electronic communications and expert recommendations

entered on 20 April 2017 that “[t]he past telephone calls of the [Schweisthals] have

been, for the most part, distracting and over burdensome for the minor child” and

that Tracy “actually does not wish to talk to [them] except on rare occasions.” The

trial court also found that Ms. Cole and Tracy “have positively interacted in their

phone conversation” and that “[t]he minor child misses her mother, [Ms.] Cole.” The

trial court found that Ms. Dunn, who “[wa]s not an expert,” believed the calls with

Ms. Cole caused “some adverse residual effect [in Tracy] afterward” and that both the

 - 10 -
 DUNN V. COVINGTON

 Opinion of the Court

Schweisthals and Ms. Cole should only be able to call Tracy every other week. The

trial court limited the Schweisthals to calls every other week, but expanded Ms. Cole’s

visitation to permit unsupervised calls every other week and allowed the possibility

of a supervised visit, based on the recommendations of the experts and advocates

involved.

 On 30 March 2017, the trial court entered an order peremptorily setting the

case for trial on 12 June 2017, as “there are issues remaining to be heard regarding

permanent custody.” The trial court heard the trial on the merits in this case on 12

and 13 June 2017. Ms. Cole testified she was engaged to be married and employed

in Arizona at two jobs: working as a behavioral health technician at a recovery center

and as a phlebotomist at a doctor’s office. She testified she would complete her federal

probation in March 2018. Ms. Cole further testified she had been sober for eighteen

months as of 13 June 2017, having successfully completed the program at Desert

Cove, and testified she attended up to five Narcotics Anonymous meetings per week.

Her testimony was corroborated by her sponsor in Narcotics Anonymous, Timoree

Branson (“Ms. Branson”), who travelled with Ms. Cole to North Carolina to testify on

her behalf.

 Ms. Cole’s counsel moved to dismiss the case for failure to state a claim, cited

several precedents of our courts, and argued there was insufficient evidence to show

Ms. Cole acted inconsistent with her constitutional rights. The trial court said it

 - 11 -
 DUNN V. COVINGTON

 Opinion of the Court

would decide the motion to dismiss at the close of the hearing; however, the court did

not rule on the motion. The trial court said it would issue an order by the following

Friday and said “I can tell you whatever the Order is, it’s going to be a temporary

Order because I’m going to see how everybody does in the transition and the

stability.” The trial court did not issue a subsequent temporary custody order.

 During the hearing, Ms. Cole also testified she had unsupervised calls with

Tracy every other week and that she never misses a call, exercising her rights to the

fullest extent permitted under the 20 April 2017 electronic communications order.

She further testified she sent gifts and clothes to Tracy, but was “kind of walking on

egg shells” because the guardian ad litem told her in an email “[she] was not allowed

to say those gifts were from [her].” Ms. Cole testified that, in her conversations with

Tracy, Tracy would refer to her as “mommy” and “Mama Courtney.” In its electronic

communications order, the trial court found—and no party challenges the finding—

that Tracy and Ms. Cole “have positively interacted in their phone conversations” and

that Tracy “misses her mother, the Defendant, [Ms.] Cole.”

 Ms. Cole filed a motion on 20 December 2017 for the Dunns to show cause why

they should not be held in contempt for failure to abide by the trial court’s 20 April

2017 electronic communications order. She alleged that, on 21 October 2017, she

“placed her regularly bi-weekly call to the minor child at the regularly schedule

time[,]” but “[t]here was no answer at the [Dunns’] home number or their cell phone

 - 12 -
 DUNN V. COVINGTON

 Opinion of the Court

numbers[,]” and that “[a]fter a year of regularly scheduled telephone visitation, this

was the first time she was not able to contact the [Dunns] to talk to her daughter.”

Ms. Cole alleged the Dunns had not answered any of Ms. Cole’s regularly scheduled

calls since that date and Ms. Dunn had blocked her phone number. The trial court

entered a show cause order finding “[p]robable cause exists to believe that Plaintiffs

are [] in contempt of Orders of this Court” and scheduled a contempt hearing for 29

January 2018. The Dunns responded to the motion to show cause alleging: Ms. Cole

had not retained an appropriate licensed counselor to facilitate reunification with

Tracy; Ms. Cole asked Tracy to call her “mother” and not Ms. Dunn; Ms. Cole and the

Schweisthals had asked the police to conduct welfare checks on Tracy; Ms. Cole had

mailed Tracy pictures for Tracy’s birthday in October 2018; and Ms. Dunn “is the best

person to determine what is harmful to the minor child.”

 On 29 January 2018, the date the trial court had set for the contempt hearing

sought by Ms. Cole, the trial court entered a permanent custody order granting

permanent custody of Tracy to the Dunns.2 Ms. Cole filed her notice of appeal of the

custody order on 22 February 2018.

 II. Analysis

 Defendant argues three issues on appeal: (1) the trial court “erred by failing to

require the Dunns to prove by clear and convincing evidence that [Ms.] Cole had ‘not

 2 On 27 March 2018, the trial court found the Dunns were not in contempt of court and
dismissed Ms. Cole’s motion to show cause.

 - 13 -
 DUNN V. COVINGTON

 Opinion of the Court

acted consistent with her constitutionally protected rights as a parent’”; (2) the trial

court’s “findings of fact do not support its conclusion of law that [Ms.] Cole ‘forfeited

her constitutionally protected right as a biological parent to have care, custody and

control’ of Tracy by clear, cogent and convincing evidence”; and (3) the trial court

“erred by making Findings of Fact that were not supported by competent evidence,

and in some situations were contradicted by the evidence.” We hold the trial court

erred by failing to require the movants to show by clear and convincing evidence that

Ms. Cole forfeited her constitutionally-protected status as the biological parent of

Tracy prior to applying the best interest of the child analysis. The trial court also

made findings of fact that were not supported by competent evidence. Therefore, we

vacate the custody order and remand the case to the trial court.

A. Analysis under Petersen and its progeny

 Defendant argues the trial court “erred by failing to require the Plaintiffs to

prove by clear and convincing evidence that [Ms.] Cole had ‘not acted consistent with

her constitutionally protected rights as a parent[.]” Specifically, Defendant argues

the trial court erred in its oral findings and written order by not announcing the

standard of proof it applied. Defendant also argues the trial court erred by not

applying the proper standard of proof: clear and convincing evidence. Plaintiffs, in

turn, argue the trial court is not required to announce the standard of proof it applies,

so long as the findings are supported by evidence that satisfies the standard.

 - 14 -
 DUNN V. COVINGTON

 Opinion of the Court

Furthermore, Plaintiffs argue, relying on a law professor’s article, that “biology does

not beget rights,” and that the “best interest of the child” analysis should control,

even where the parent is not shown to be unfit.

 Following United States Supreme Court precedent, our Courts have long

recognized “a natural parent’s liberty interest in the companionship, custody, care,

and control of his or her child” arising under the Fourteenth Amendment Due Process

Clause. Price v. Howard, 346 N.C. 68, 74, 484 S.E.2d 528, 531 (1997); see Troxel v.

Granville, 530 U.S. 57, 66, 147 L.Ed.2d 49, 57 (2000) (reaffirming a parent’s

fundamental right “to make decisions concerning the care, custody, and control” of

the parent’s children). In Petersen v. Rogers, 337 N.C. 397, 445 S.E.2d 901, our

Supreme Court held that “absent a finding that parents (i) are unfit or (ii) have

neglected the welfare of their children, the constitutionally-protected paramount

right of parents to custody, care, and control of their child must prevail.” Petersen v.

Rogers, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994). In so holding, our Supreme

Court in Petersen “expressly disavowed” language to the contrary in Best v. Best, 81

N.C. App. 337, 344 S.E.2d 363 (1986), on which the Petersen plaintiffs relied to argue

that the welfare of the child “is paramount to all common law preferential rights of

the parents.”3 Id. Our Supreme Court in Petersen reasoned that the defendants’

 3 The Plaintiffs’ argument citing to a law professor’s article for the proposition that “biology
does not beget rights” is, therefore, not supported by North Carolina law; nor is their assertion that
“North Carolina Courts have routinely deferred to the child’s best interests in resolving custody
disputes” when it comes to disputes between a natural parent and a non-parent third-party.

 - 15 -
 DUNN V. COVINGTON

 Opinion of the Court

“paramount right” as natural parents “had to prevail” over the plaintiffs’ position as

unlawful adoptive parents of the child, where “there was no finding that [the]

defendants had neglected their child’s welfare in any way.” Id. at 404, 447 N.C. at

905.

 Our Supreme Court reaffirmed and extended its analysis of the rights of

natural parents in Price v. Howard. In Price, the defendant was the natural mother

who gave birth to the child at issue and had represented that the plaintiff was the

father. Id. at 70-71, 484 S.E.2d at 529. However, when the plaintiff and defendant

separated, the child remained with the plaintiff for six years. Id. at 71, 484 S.E.2d at

529-30. A court-ordered blood test established the plaintiff was not the child’s natural

father and thus was a non-parent third party. Id. In Price, the key issue was

“whether, under the facts of th[e] case, the trial court was required to hold that [the]

defendant’s constitutionally protected interest in the companionship, custody, care

and control of her child must prevail or whether the statutorily prescribed ‘best

interest of the child’ test should have been applied to determine custody.” Id. at 74,

484 S.E.2d at 531.

 Our Supreme Court reaffirmed that a natural parent has a “liberty interest in

the companionship, custody, care and control of his or her child[,]” id. at 74, 484

S.E.2d at 531, but it further noted that while a fit and suitable parent is “‘entitled to

the custody of his child, it is equally true that where fitness and suitability are absent

 - 16 -
 DUNN V. COVINGTON

 Opinion of the Court

he loses this right.’” Id. at 75, 484 S.E.2d at 532 (quoting Wilson v. Wilson, 269 N.C.

676, 677, 153 S.E.2d 349, 351 (1967)). Our Supreme Court then adopted the following

test for determining when the “best interest of the child” analysis could apply without

infringing a natural parent’s constitutional rights:

 A natural parent’s constitutionally protected paramount
 interest in the companionship, custody, care, and control of
 his or her child is a counterpart of the parental
 responsibilities the parent has assumed and is based on a
 presumption that he or she will act in the best interest of
 the child. Therefore, the parent may no longer enjoy a
 paramount status if his or her conduct is inconsistent with
 this presumption or if he or she fails to shoulder the
 responsibilities that are attendant to rearing a child. If a
 natural parent’s conduct has not been inconsistent with his
 or her constitutionally protected status, application of the
 “best interest of the child” standard in a custody dispute
 with a nonparent would offend the Due Process Clause.
 However, conduct inconsistent with the parent’s protected
 status . . . would result in application of the “best interest
 of the child” test without offending the Due Process Clause.
 Unfitness, neglect, and abandonment clearly constitute
 conduct inconsistent with the protected status parents may
 enjoy. Other types of conduct, which must be viewed on a
 case-by-case basis, can also rise to this level so as to be
 inconsistent with the protected status of natural parents.
 Where such conduct is properly found by the trier of fact,
 based on evidence in the record, custody should be
 determined by the “best interest of the child” test
 mandated by statute.

Id. at 79, 484 S.E.2d at 534-35 (citations omitted). The Court reversed and remanded

with instructions to remand to the trial court “for a determination of whether

defendant’s conduct was inconsistent with the constitutionally protected status of a

 - 17 -
 DUNN V. COVINGTON

 Opinion of the Court

natural parent,” id. at 84, 484 S.E.2d at 537, as the facts included “a period of

voluntary nonparent custody rather than unfitness or neglect,” id. at 82, 484 S.E.2d

at 536.

 In a subsequent case, Adams v. Tessener, 354 N.C. 57, 550 S.E.2d 499, our

Supreme Court held that “a trial court’s determination that a parent’s conduct is

inconsistent with his or her constitutionally protected status must be supported by

clear and convincing evidence.” Adams v. Tessener, 354 N.C. 57, 63, 550 S.E.2d 499,

503 (2001) (citing Santofsky v. Kramer, 455 U.S. 745, 747-48, 71 L.Ed.2d 599, 603

(1982)). However, the Court in Adams affirmed the trial court’s conclusions of law

and application of the “best interest of the child” standard on the record before it

because the intervenor-natural father did not argue the trial court erred in its

findings of fact, and the “evidence of the record constitutes clear and convincing proof

that [the intervenor]’s conduct was inconsistent with his right to custody of the child.”

Id. at 66, 550 S.E.2d at 505.

 In David N. v. Jason N., 359 N.C. 303, 608 S.E.2d 751, our Supreme Court

reversed and remanded a trial court judgment awarding custody to a non-parent over

a natural parent and held that the trial court, in finding that the natural father of

the child acted in a way inconsistent with his constitutionally-protected status, “failed

to apply the clear and convincing evidence standard as set forth in Adams in making

this determination[.]” David N., 359 N.C. 303, 307, 608 S.E.2d 751, 754 (2005).

 - 18 -
 DUNN V. COVINGTON

 Opinion of the Court

 When read together, these cases

 protect a natural parent’s paramount constitutional right
 to custody and control of his or her children. The Due
 Process Clause ensures that the government cannot
 unconstitutionally infringe upon a parent’s paramount
 right to custody solely to obtain a better result for the child.
 As a result, the government may take a child away from
 his or her natural parent only upon a showing that the
 parent is unfit to have custody, or where the parent’s
 conduct is inconsistent with his or her constitutionally
 protected status.

Adams, 354 N.C. at 62, 550 S.E.2d at 503 (citation omitted). In making the

determination that a natural parent is unfit or has otherwise acted in a manner

inconsistent with her constitutionally-protected status, the trial court must apply the

clear and convincing evidence standard. David N., 359 N.C. at 307, 608 S.E.2d at

754. In a custody dispute between a natural parent and a non-parent third-party,

only after the trial court has determined by clear and convincing evidence that the

natural parent has lost her paramount right as a result of unfitness or acting in a

manner inconsistent with her constitutionally-protected status may the trial court

proceed to the “best interest of the child” analysis. As our Supreme Court

summarized in Owenby v. Young, 357 N.C. 142, 579 S.E.2d 264:

 [T]he Due Process Clause of the Fourteenth Amendment
 ensures that the government does not impermissibly
 infringe upon a natural parent’s paramount right to
 custody solely to obtain a better result for the child. Until,
 and unless, the movant establishes by clear and convincing
 evidence that a natural parent’s behavior, viewed
 cumulatively, has been inconsistent with his or her

 - 19 -
 DUNN V. COVINGTON

 Opinion of the Court

 protected status, the “best interest of the child” test is
 simply not implicated. In other words, the trial court may
 employ the “best interest of the child” test only when the
 movant first shows, by clear and convincing evidence, that
 the natural parent has forfeited her constitutionally
 protected status.

Owenby, 357 N.C. 142, 148, 579 S.E.2d 264, 268 (2003) (internal citations omitted).

 In the present case, the trial court, in its conclusions of law in the permanent

custody order, stated as follows:

 2. It is in the best interest of the minor child to be in the
 permanent custody, care and control of the Plaintiffs.
 ...
 4. Also, based on the foregoing Findings of Fact the Court
 concludes that the Defendant Cole, based on her conduct,
 as set forth herein, has forfeited her Constitutionally
 protected right as a biological parent to have the care,
 custody and control [of] her minor child. [R 181-82]

The trial court erred in applying the “best interest of the child” analysis to grant

custody to the Dunns prior to determining whether Ms. Cole lost her paramount right

by acting inconsistent with her constitutionally-protected status.

 The trial court also failed to apply the clear and convincing evidence standard

as set forth in David N. in making this determination, David N., 359 N.C. at 307, 608

S.E.2d at 754, because it failed to state which standard of proof it used. “Clear and

convincing evidence” is a higher evidentiary standard than the “greater weight of the

evidence” standard used in ordinary child custody cases between natural parents

where the “best interest of the child” is the sole test. See Everette v. Collins, 176 N.C.

 - 20 -
 DUNN V. COVINGTON

 Opinion of the Court

App. 168, 173, 625 S.E.2d 796, 799 (2006). As the trial court did not state which

standard it used, an appellate court cannot review the record to determine whether

the trial court complied with this requirement. Cf. In re Church, 136 N.C. App. 654,

657, 525 S.E.2d 478, 480 (2000) (holding trial court erred in termination-of-parental-

rights case when it failed to affirmatively state clear, cogent and convincing

evidentiary standard because “without such an affirmative statement the appellate

court is unable to determine if the proper standard of proof was utilized”); accord

David N., 359 N.C. at 307, 608 S.E.2d at 754 (reversing trial court order where it

stated parent’s conduct was “tantamount to abandonment, neglect, abuse or other

acts inconsistent with [a] natural parent’s constitutionally protected interest[,]” but

did not state clear and convincing evidentiary standard).

 The trial court also conflated the “best interest of the child” analysis with the

independent and prior question of whether Ms. Cole, the natural parent, was unfit or

acted inconsistent with her constitutionally-protected status. While “[u]nfitness,

neglect, and abandonment clearly constitute conduct inconsistent with the protected

status parents may enjoy[,]” other conduct “can also rise to this level” but “must be

viewed on a case-by-case basis[.]” Price, 346 N.C. at 79, 484 S.E.2d at 534-35. Our

Courts have long held that a parent’s “socioeconomic status is irrelevant to a fitness

determination.” Raynor v. Odom, 124 N.C. App. 724, 731, 478 S.E.2d 655, 659 (1996)

(citing Jolly v. Queen, 264 N.C. 711, 713-14, 142 S.E.2d 592, 595 (1965)). Indeed, in

 - 21 -
 DUNN V. COVINGTON

 Opinion of the Court

Jolly v. Queen, our Supreme Court specifically contrasted the question of the

relevance of socioeconomic status to a parent’s fitness with its role in the “best

interest of the child” standard. See Jolly v. Queen, 264 N.C. 711, 715, 142 S.E.2d 592,

596 (1965) (“Conceivably, a judge might find it to be in the best interest of a legitimate

child of poor but honest, industrious parents . . . that his custody be given to a more

affluent . . . relative who had no child and desired him. Such a finding, however,

could not confer a right as against such parents who had not abandoned their child,

even though they had permitted him to spend much time in the [relative]’s home.”).

 Socioeconomic factors that this Court has held do not show a parent’s unfitness

or acts inconsistent with constitutionally-protected status include the propriety of the

parent’s place of residence, that the parents move frequently, that their house at

times lacked heat or was not cleaned regularly, their choice in spouse or babysitter,

that the parent did not have relatives nearby to assist in caring for the child, a history

of being unable to maintain stable employment, and loss of a job. See Perdue v.

Fuqua, 195 N.C. App. 583, 587, 673 S.E.2d 145, 149 (2009); Myers v. Myers, 148 N.C.

App. 716, 562 S.E.2d 117, 2002 WL 275956 at *8 (2002) (unpublished); Penland v.

Harris, 135 N.C. App. 359, 363, 520 S.E.2d 105, 108 (1999); Rhodes, 14 N.C. App. at

408, 188 S.E.2d at 567. While socioeconomic factors such as the quality of a parent’s

residence, job history, or other aspects of their financial situation would be relevant

 - 22 -
 DUNN V. COVINGTON

 Opinion of the Court

to the determination of whose custody is in the best interest of the child, those factors

have no bearing on the question of fitness.

 In the present case, the findings the trial court relied on to conclude Ms. Cole

acted inconsistent with her constitutionally-protected status included that she was

temporarily “homeless”; that she had “removed herself from the [Dunns’] home”; that

she “not until recently, maintained gainful and continuous employment”; and that

she previously “only worked sporadically.” All of these are socioeconomic factors that

may be relevant to a “best interest of the child” analysis but have no relevance to the

preliminary question of whether Ms. Cole is unfit or has acted inconsistent with her

constitutionally-protected status. The trial court also incorporated “all Findings of

Fact in its previous orders to further bolster the issuance of [its permanent custody

o]rder,” but those factual findings in the original temporary custody order have the

same defect. [R 180] Indeed, the trial court’s oral finding at the March 2015

temporary custody hearing focusing on Ms. Cole’s lack of “a proper permanent

residence for the child,” as well as its finding that “she makes just enough money now

to be able to afford to pay the hotel and that’s it” shows that, from the beginning, the

trial court improperly considered Ms. Cole’s socioeconomic status in determining that

she was unfit or had acted inconsistent with her constitutionally-protected status.

 We hold the trial court failed to first determine whether Ms. Cole forfeited her

paramount right before conducting a “best interest of the child” test, failed to

 - 23 -
 DUNN V. COVINGTON

 Opinion of the Court

articulate the clear and convincing standard of evidence, and conflated the question

of whether Ms. Cole acted inconsistent with her constitutionally-protected status

with the “best interest of the child” test. As our Supreme Court held in Owenby, “the

trial court may employ the ‘best interest of the child’ test only when the movant first

shows, by clear and convincing evidence, that the natural parent has forfeited [] her

constitutionally protected status.” Owenby, 357 N.C. at 148, 579 S.E.2d at 268. In

this case, the trial court conducted a “best interest of the child” analysis without

requiring that constitutionally-mandated preliminary showing in both the March

2015 temporary custody order and the January 2018 permanent custody order on

appeal and thus failed to protect Ms. Cole’s paramount constitutional right to the

custody and control of her child under the Due Process Clause.

B. The Trial Court’s Findings of Fact

 The trial court also made findings of fact that are not supported by competent

evidence.

 [W]e first note that in custody cases, the trial court sees the
 parties in person and listens to all the witnesses. This
 allows the trial court to “detect tenors, tones and flavors
 that are lost in the bare printed record read months later
 by appellate judges.” Accordingly, the trial court’s findings
 of fact “‘are conclusive on appeal if there is evidence to
 support them, even though the evidence might sustain
 findings to the contrary.’”

Adams, 354 N.C. at 63, 550 S.E.2d at 503 (internal citations omitted). “Findings of

fact made in the custody proceeding, when supported by competent evidence, are

 - 24 -
 DUNN V. COVINGTON

 Opinion of the Court

conclusive on appeal.” In re Orr, 254 N.C. 723, 726, 119 S.E.2d 880, 882 (1961)

(citation omitted).

 In the present case, the trial court made the following findings of fact in its 29

January 2018 permanent custody order that are challenged by Defendant:

 a. [Ms. Cole] abdicated her daily nurturing, daily care and
 all the necessary activities related to child-rearing of the
 minor child to the paternal grandparents, [the Dunns].
 b. Both the Defendants, [Mr.] Covington and [Ms.] Cole,
 were homeless in Arizona until taken in by the Plaintiffs in
 Emerald Isle, North Carolina in 2015. The Plaintiff’s
 traveled to Arizona, returning to their residence with both
 Defendant’s and the minor child after the Defendant
 Intervenors refused to allow them to reside in their
 residence in Arizona.
 c. The Defendant Cole, not until recently, maintained
 gainful and continuous employment and as of the date of
 this hearing and [(sic)] she was still on federal probation in
 Arizona for trafficking in firearms to Mexico, having been
 convicted in 2009.
 d. In early 2015, Defendant Cole removed herself from the
 Plaintiff’s home and eventually the Plaintiff’s [(sic)] evicted
 the Defendant Covington as he refused to leave
 voluntarily.
 e. As a result of the Onslow County Department of Social
 Services conducting an investigation in 2015, the minor
 child was removed from the care, custody and control of the
 mother, Courtney Cole, and was placed with the Plaintiffs.
 ...
 j. Defendant testified she went to another detox facility
 December 2015 from which she was discharged in June
 2016 and had been “clean” for seven (7) months as of the
 date of this hearing, June 2017. Defendant testified she
 would be on supervised probation until March, 2018. Also,
 as of the date of this hearing, [t]he Defendant has obtained
 a residence and now lives with her boyfriend whom she met
 in a drug rehabilitation facility.

 - 25 -
 DUNN V. COVINGTON

 Opinion of the Court

The trial court also expressly incorporated the factual findings made in its previous

orders in the permanent custody order at issue “to further bolster the issuance of this

[o]rder[.]” [R 180] In addition to the above challenged findings of fact, Defendant

also challenged the following factual findings from the trial court’s 19 March 2015

temporary custody order:

 14. That during the time the Defendants resided with the
 Dunns, they did not assist with the daily care, feeding or
 clothing of their minor child, and said care was provided to
 the minor child by Plaintiff Karla Dunn.
 15. The Defendants provided no monetary support for
 their minor child while living with the Plaintiffs, and said
 support for the minor child was provided by Plaintiffs
 alone.
 ...
 21. That Defendant Cole testified that she was asked to
 leave Plaintiffs’ residence about mid February, 2015, as the
 Plaintiffs stated she had made little to no efforts to become
 employed.
 ...
 29. That neither Defendant sought assistance from any
 agency for housing, food or daycare.

After reviewing the record, we agree with Defendant and hold that none of the

challenged statements are supported by competent evidence and are often

contradicted by evidence in the record. As Defendant notes in her reply brief,

Plaintiffs “cite no evidence, competent or otherwise, in either the transcript []or

record to support any of the trial court’s eight [] findings of fact identified by

[Defendant] in her Brief.” We consider the challenged statements in turn.

 - 26 -
 DUNN V. COVINGTON

 Opinion of the Court

1. Daily Care of Tracy

 In Finding of Fact 7(a), the trial court found that Ms. Cole “abdicated her daily

nurturing, daily care and all the necessary activities related to child-rearing of

[Tracy] to the [Dunns.]” However, Defendant argues that “it was uncontradicted that

Tracy slept with [Ms. Cole] and [Mr. Covington] in the upstairs bedroom[,]” and, [a]s

a result, [Ms. Cole] provided some daily care for Tracy, at a minimum putting her

down to go to sleep and getting her up in the mornings.” Plaintiffs, however, do not

point to any particular competent evidence to support this factual finding.

 Ms. Cole testified that, while living with the Dunns, she cared for Tracy on a

daily basis when she did not work. She testified that, although she suffered from

anxiety attacks in the mornings, “if someone from the Dunn family hadn’t already

made breakfast for [Tracy] [she] would make breakfast for her”; she would “let her

play a little bit, watch cartoons, there would be times where [she]’d go out in the pool

with [Tracy]”; she would “take her out on her little bike around the block”; and

“ma[k]e sure she had snacks, lunch.” Ms. Cole further testified that she, Tracy, and

Mr. Covington slept in the same upstairs bedroom, and she would put Tracy to bed

at night “[t]o the best of [her] ability,” because “it was kind of hard to get Tracy to

sleep.”

 Ms. Dunn testified on direct examination that “before [when Ms. Cole had

custody of Tracy,] she stayed up in the bedroom a lot if they were there, if they could

 - 27 -
 DUNN V. COVINGTON

 Opinion of the Court

keep up there.” She also testified that, after Ms. Cole left the residence, Tracy did

not sleep in her own room, but “she sleeps with . . . [Mr. Covington].” She also

testified that, while Ms. Cole was living with the Dunns, Ms. Cole would feed Tracy

breakfast around five times per month. Also, Plaintiffs’ counsel at trial had Mr.

Covington confirm that “[Ms. Cole’s] interaction with the child was to take her in the

room and have her go to sleep with her.” After reviewing this evidence, we agree with

Defendant that the evidence in the record does not support the trial court’s factual

finding that she “abdicated her daily nurturing, daily care and all the necessary

activities related to child-rearing of [Tracy] to the [Dunns.]” At a minimum the

uncontradicted evidence shows Ms. Cole put Tracy to bed and helped her get to sleep

at night, which is a necessary activity in caring for a child, particularly since Tracy

had trouble sleeping, and also that Ms. Cole would feed Tracy breakfast about five

times per month. This finding is therefore not supported by competent evidence and

is contradicted by evidence in the record.

2. Ms. Cole’s financial assistance and government aid for Tracy

 Finding of Fact 15 of the temporary custody order, which was incorporated by

reference into the findings of fact of the permanent custody order, states “[t]hat the

Defendants provided no monetary support for their minor child while living with the

Plaintiffs, and said support for the minor child was provided by Plaintiffs alone.”

Also, in Finding of Fact 29 of the temporary custody order, similarly incorporated by

 - 28 -
 DUNN V. COVINGTON

 Opinion of the Court

reference, the trial court states “[t]hat neither Defendant has sought assistance from

any agency for housing, food or daycare.”

 Although the trial court found Defendants “said support for the minor child

was provided by Plaintiffs alone[,]” Ms. Cole actually testified that the Dunns paid

for everything regarding Tracy “except for food.” This finding is therefore

contradicted by the evidence. Moreover, Defendant argues in her brief “it was

uncontradicted that [Ms. Cole] obtained an ADT (EBT or food stamps) card while in

the Dunns[‘] home and that it was used for the benefit of Tracy.” Although when

asked on redirect examination “who pays the expenses for the child, while the child’s

been in your home[,]” Ms. Dunn said “[w]e pay for all of her stuff[,]” she then admitted

“[Ms. Cole] got a ADT [(i.e., EBT)] card, I think for a few months and we used that to

buy uhm, food for the house but that didn’t buy diapers and the uhm, the baby stuff.”

[T 52] Furthermore, in their brief, Plaintiffs do not point to any particular competent

evidence that supports these challenged findings. Therefore, the trial court’s findings

that “Defendants provided no monetary support for their minor child while living

with the Plaintiffs,” and “that neither Defendant ha[d] sought assistance from any

agency for housing, food or daycare[,]” are both contradicted by the evidence because,

at a minimum, the record shows Ms. Cole provided for Tracy’s food by acquiring an

EBT card, which constitutes substantial financial support for the child.

3. Ms. Cole’s Employment History

 - 29 -
 DUNN V. COVINGTON

 Opinion of the Court

 In Finding of Fact 7(c) of its permanent custody order, the trial court found

that “[Ms. Cole], not until recently, maintained gainful and continuous

employment[.]” Also, in its oral factual findings for the temporary custody order, the

trial court found that “[Ms. Cole had] only recently become stably employed[,]” and,

in paragraph 21 of the temporary custody order, the trial court found that “[Ms. Cole]

had made little to no efforts to become employed[.]” Defendant argues in her brief

that the record contradicts the trial court’s statements because, during the seven

months she lived with the Dunns, she had seven jobs; she had two jobs at the time of

the temporary custody hearing in March 2015; and she had two jobs at the time of

the permanent custody hearing in June 2017. Moreover, Defendant notes that Ms.

Dunn “admitted that allegation 16 in her complaint, that [Ms. Cole] had made no

effort to become gainfully employed, was not true[,]” and that “[i]f a plaintiff testifies

that an allegation in her Complaint is not true, then it should be error for the trial

[court] to find that allegation to be true and rely upon that allegation as a basis to

deny [Ms. Cole] custody of Tracy.”

 The record shows that two weeks after Ms. Cole arrived in Emerald Isle in

April 2014 to live with the Dunns, she got a job at Emerald Grill. She also worked

with Mr. Covington cleaning beach condos during that time. Ms. Cole testified that

she soon got frustrated with her employer taking money back from all the employees

for shortages, even if particular employees were not responsible for them. She worked

 - 30 -
 DUNN V. COVINGTON

 Opinion of the Court

at Emerald Grill for about two weeks and, as a result of her dissatisfaction, sought

and obtained employment elsewhere after one or two weeks of searching. Ms. Cole

obtained a job at Santorini’s Grill and “liked it there for the most part[,] so [she] ended

up staying there for a little bit.” She worked there for about three months, from July

to October 2014. Ms. Cole testified she left around Halloween and “tried finding jobs

in medical positions, [and] didn’t really have any luck because of [her prior criminal]

background.” She testified she got a job at an Urgent Care in Jacksonville around

the end of December 2014. However, she testified at both the 9 March 2015

temporary custody hearing and the 13 June 2017 custody hearing that her work

ended after two and a half weeks, when she learned there would be a background

check and she informed her employer that she had a felony on her record and was on

probation. She further testified that, just prior to the filing of the complaint in

January 2015, she was first prescribed opiates by a dentist and sought treatment for

her opioid dependency at Port.

 Ms. Cole testified that, at the time of the temporary custody hearing on 9

March 2015, she was employed at two jobs. She “work[ed] three to four days a week

[at Crystal Coast Retina Center] and then [she was] trying to make it where [she]

work[ed] the rest of the days at Golden Corral.”

 At the time of the 13 June 2017 custody hearing, Ms. Cole testified she lived

in Phoenix, Arizona, and worked two jobs: “at a rehab center at Fountain Hills

 - 31 -
 DUNN V. COVINGTON

 Opinion of the Court

Recovery and . . . for a doctor’s office as a Medical Assistant, Phlebotomist at

Regenesis in Scottsdale[, Arizona.]” She testified she had her job at Fountain Hills

Recovery since 4 January 2017 and it was a full-time job, working forty hours every

week for $13.50 per hour. At the same time, she worked at the doctor’s office as a

medical assistant around thirty or thirty-five hours a week for $17 per hour. Ms. Cole

testified she was working about seventy to seventy-five hours a week at the time of

the 13 June 2017 custody hearing.

 After reviewing the record and the transcripts, we find no competent evidence

to support—and substantial evidence that contradicts—the trial court’s Finding of

Fact 7(c) that “[Ms. Cole], not until recently, maintained gainful and continuous

employment[.]” The record clearly shows that Ms. Cole obtained gainful employment

immediately upon moving to North Carolina and remained employed throughout her

seven months living with the Dunns, despite some periods of unemployment between

jobs. Moreover, during those periods between jobs, the record shows Ms. Cole actively

looked for new employment and even sought more advanced and steady employment

to the extent her circumstances as a person with a felony record permitted.

 Plaintiffs do not cite to any competent evidence that supports the factual

findings at issue. Instead, Plaintiffs argue that “[Ms. Cole’s] idea of gainful

employment was having several jobs in a short period of time while maintaining none

of them for any length of time.” Merriam-Webster’s defines “gainful” as “productive

 - 32 -
 DUNN V. COVINGTON

 Opinion of the Court

of gain: profitable.” Gainful, Merriam Webster’s New Collegiate Dictionary 511 (11th

ed. 2003). Leaving a job that, as Ms. Cole testified, is withholding money owed is

itself “productive of gain” if it leads to obtaining more remunerative employment,

such as Ms. Cole’s move from one restaurant to another and is leaving a job in the

food service industry to pursue a career in a medical field, as Ms. Cole did in seeking

and obtaining the Urgent Care job after having worked in a restaurant for three

months. Neither the trial court nor Plaintiffs cite any case supporting a holding that

working too many jobs supports a finding that a parent is unfit or has acted

inconsistent with their constitutionally-protected status. While Ms. Cole may not

have had the opportunities available to others, such as Plaintiffs, particularly as a

collateral consequence of her felony conviction, our Courts have held such

socioeconomic factors are not relevant to finding that a parent has acted inconsistent

with their constitutionally-protected status.

 We further note that the trial court dismissed as irrelevant the two jobs Ms.

Cole was working at the time of the March 2015 temporary custody hearing at Crystal

Coast Retina Center and Golden Corral by making the oral finding that “[Ms. Cole

had] only recently become stably employed.” Similarly, the trial court wrongly

dismissed the two demanding jobs Ms. Cole was working for seventy or more hours a

week at the time of the June 2017 custody hearing and her over five months of full-

time employment leading up to that hearing by finding “[Ms. Cole], not until recently,

 - 33 -
 DUNN V. COVINGTON

 Opinion of the Court

maintained gainful and continuous employment[.]” In both instances, Ms. Cole’s

employment at the time of the hearing contradicts the trial court’s primary factual

finding and the trial court cannot ignore competent contradictory evidence by merely

discounting it. For these reasons, the trial court’s factual findings that “[Ms. Cole],

not until recently, maintained gainful and continuous employment[,]” and “[Ms. Cole

had] only recently become stably employed[,]” are not supported by competent

evidence and contradicted in the record.

 The trial court’s finding in the 2015 temporary custody order that “[Ms. Cole]

had made little to no efforts to become employed[,]” is also not supported by

competent evidence and contradicted by evidence in the record. The Plaintiffs made

the following allegation in their original complaint, which was discussed at the 25

March 2015 temporary custody hearing: “The Plaintiffs are preparing to evict [Ms.]

Cole because she has made no effort to become gainfully employed or to substantially

participate in the care of her daughter.” After reading this allegation in court, Ms.

Dunn admitted it was untrue on cross-examination because, as Ms. Dunn testified,

“[Ms. Cole] was making an effort to be gainfully employed.” Ms. Dunn’s admission

directly contradicts the trial court’s factual finding and no other competent evidence

supports this finding; indeed, the record shows Ms. Cole has made and continues to

make efforts to find and maintain gainful employment, even maintaining multiple

jobs. Therefore, the trial court’s findings regarding Ms. Cole’s employment history

 - 34 -
 DUNN V. COVINGTON

 Opinion of the Court

are not supported by competent evidence and contradicted by evidence in the record.

The trial court erred in relying on Ms. Cole’s employment history in finding she was

unfit.

4. The finding that Ms. Cole had been “homeless” and her housing history

 In Finding of Fact 7(b) of the permanent custody order, the trial court found

that “[b]oth the Defendants, [Mr.] Covington and [Ms.] Cole, were homeless in

Arizona until taken in by the Plaintiffs in Emerald Isle, North Carolina in 2015.” In

its oral findings for the temporary custody order hearing, the trial court stated “[s]he,

in the Court’s opinion, is still basically homeless because she still lives in a hotel room

at a Main Stay Suites[.]” Counsel for Ms. Cole challenged the trial court’s description

of Ms. Cole’s living situation, but the trial court persisted, saying she was homeless

because she lacked “a proper permanent residence for the child” and that “[the trial

court] considers her homeless. People living in hotel rooms whether they’re Extended

Stays with suites or not, in my opinion, are homeless.” The trial court further orally

characterized ‘homelessness’ in addressing Mr. Covington’s fitness in the temporary

custody order hearing:

 Mr. Covington, the way I think, I find you’re unfit is
 because you’re homeless. You live with your parents at
 their, what would I say, if they told you to go, you’d have to
 go, so basically you’re homeless. And you know, I
 sympathize with you. You know, I can’t put a child in the
 street.

 - 35 -
 DUNN V. COVINGTON

 Opinion of the Court

Merriam-Webster’s defines “homeless” as “having no home or permanent place of

residence” and “home” as “one’s place of residence: domicile[.]” Homeless, home,

Merriam-Webster’s New Collegiate Dictionary 594 (11th ed. 2003). Also, the

McKinney-Vento Homeless Assistance Act (“the Act”), 42 U.S.C. § 11301 et seq.,

defines “homeless” as an “individual or family who lacks a fixed, regular, and

adequate nighttime residence[.]” 42 U.S.C. § 11302(a)(1) (2015). The record shows

that Defendants did “reside” overnight with Tracy in the extended-stay motel for a

month; however, an extended-stay motel is “fixed, regular, and adequate” and is

clearly meant for human habitation and Defendants were therefore not homeless

under that definition. Another definition in the Act is “an individual or family

who . . . will imminently lose their housing, including . . . rooms in hotels or motels

not paid for by [government assistance programs,]” as evidenced by “the individual

or family having a primary nighttime residence that is a room in a hotel or motel and

where they lack the resources necessary to reside there for more than 14 days”; “has

no subsequent residence identified” and “lacks the resources or support networks

needed to obtain other permanent housing.” Id. § 11302(5)(A)-(C). However, the

evidence shows Defendants were able to pay for their own stay for a month and that

Ms. Cole and Tracy (although not Mr. Covington) had the “support network[]” in the

Schweisthals to obtain a subsequent permanent residence in their home. Moreover,

the Defendants, including Mr. Covington, had support from the Dunns through their

 - 36 -
 DUNN V. COVINGTON

 Opinion of the Court

offer to move into their residence in North Carolina. Therefore, at no time was Ms.

Cole “homeless,” either in an ordinary sense or as defined by our federal statutes.

That she chose to live with the Dunns, who would ultimately seek to evict her, over

her own parents for the sake of Mr. Covington does not mean that she was ever

“homeless,” particularly since she had subsequent housing after eviction from the

Dunns with her friend from the restaurant and, later, in a motel which she paid for

herself, and during which time she still had the support of her parents. We hold this

finding of fact was not supported by competent evidence and was contradicted by

evidence in the record. The trial court erred in relying on Ms. Cole’s housing history

in finding she was unfit.

5. The finding that Ms. Cole “removed herself” from Plaintiffs’ home

 In Finding of Fact 7(d) of the permanent custody order, the trial court found

that Ms. Cole “removed herself from the Plaintiff’s home . . . .” Defendant challenges

this finding and argues that, contrary to Ms. Cole “removing herself” from the Dunns’

house, “[i]t was uncontradicted at trial that the Dunns did not tell [Ms. Cole] to get

out of their house, until after they had received an ex parte temporary custody order

for Tracy. [Ms. Cole] was told to get out of the Dunns’ house, the same day the Dunns’

complaint and ex parte temporary custody order were served on her.” We agree with

Defendant. The evidence shows the Dunns evicted Ms. Cole after filing the complaint

stating their plan to evict her and asking her to leave. There is no evidence to suggest

 - 37 -
 DUNN V. COVINGTON

 Opinion of the Court

that leaving the Dunns’ residence and her daughter was Ms. Cole’s choice. This

finding is not supported by competent evidence.

6. The Length of Ms. Cole’s Sobriety

 Finding of Fact 7(j) of the trial court’s permanent custody order states that

“[Ms. Cole] had been ‘clean’ for seven [] months as of the date of this hearing, June,

2017.” [R 179] However, Defendant argues this finding is contradicted by evidence

in the record, because Ms. Cole testified she had been clean and sober for 18 months

as of June 2017. Her testimony was corroborated by her Narcotics Anonymous

sponsor and no evidence was offered to contradict this testimony. We agree. Ms. Cole

testified she “actually ha[d] eighteen months today” on 13 June 2017. We note she

testified she was sober for seven months while in the Desert Cove recovery program,

but she then testified she was sober for nearly a year after completing the program.

Thus all competent evidence in the record shows Ms. Cole was sober for 18 months

as of 13 June 2017, not the seven months found by the trial court. This finding was

not supported by competent evidence. We note that, given the multiple factual

findings relating to Ms. Cole’s prior drug use, the court inappropriately discounts her

sobriety by minimizing its duration in comparison.

7. The finding that Ms. Cole was convicted of “trafficking firearms to Mexico”

 In Finding of Fact 7(c) of the permanent custody order, the trial court found

“as of the date of this hearing and [(sic)] she was still on federal probation in Arizona

 - 38 -
 DUNN V. COVINGTON

 Opinion of the Court

for trafficking in firearms to Mexico, having been convicted in 2009.” Ms. Cole

contends this finding is not supported by competent evidence because “[Ms. Cole]

testified that she had been convicted in federal court in Arizona of conspiring to sell

firearms without a license, and there was no evidence offered to contradict this.”

After reviewing the record, we agree. The evidence shows Ms. Cole was convicted of

conspiracy to sell firearms without a license and no other offense. The trial court’s

mislabeling of the offense is not supported by competent evidence. We further note

that, at the time the order issued on 29 January 2018, Ms. Cole only had just over a

month of federal probation remaining.

8. The findings that Ms. Cole “had no face to face contact with [Tracy] in two years”

 Finally, in Finding of Fact 11 of the permanent custody order, the trial court

states “as of the date of this hearing [Ms. Cole] has had no face to face contact with

[Tracy] in two (2) years.” Also, in Finding of Fact 13, it states “Dr. James testified

the minor child suffers from severe ‘Reactive Attachment Disorder’ as a result of

having no contact with the biological mother in two (2) years . . . .” Defendant does

not challenge the veracity of these findings, but instead argues “it was not the fault

of [Ms. Cole], and should not be used as grounds for awarding permanent custody of

Tracy to the Dunns.” Defendant cites numerous instances where her contact with

Tracy was restricted not by her own choice or based on neglect, but by the actions of

Plaintiffs and the orders of the trial court. Although Defendant’s arguments

 - 39 -
 DUNN V. COVINGTON

 Opinion of the Court

regarding these particular factual findings are couched as challenges based on lack

of competent evidence, Defendant essentially argues that the factual findings that

she has not seen her daughter face-to-face for two years does not support the legal

conclusion that she has acted inconsistent with her parental rights. We agree.

 In early 2015, the Dunns filed their complaint and the trial court gave

emergency and then temporary custody of Tracy to the Dunns. During that time, Ms.

Cole visited with Tracy frequently. In June 2015, her in-person visitation was

restricted by the trial court after her positive drug test. Just as Ms. Cole was about

to graduate from The Meadows drug rehabilitation program in Arizona, the

Schweisthals moved for expanded visitation and the court established a visitation

schedule that included four opportunities for in-person visitation with Ms. Cole and

the Schweisthals in October 2016, December 2016, April 2017, and July 2017. Tracy

did visit Ms. Cole and the Schweisthals for the October 2016 trip. However, the

Dunns soon sought, and the trial court chose to grant, an ex parte emergency order

canceling the December 2016 trip and future in-person visitation to Arizona on the

bare allegation by the guardian ad litem that the Schweisthals would seek to keep

Tracy in Arizona. Subsequently, the trial court instructed the Dunns to work with

the experts and arrange in-person visitation with Ms. Cole and the Schweisthals

while they were in North Carolina for the 12 June 2017 hearing. They did not do so.

 - 40 -
 DUNN V. COVINGTON

 Opinion of the Court

 The record shows Ms. Cole, on her own initiative, sought and obtained

expanded FaceTime and Skype visitation in the 20 April 2017 electronic

communications order approved by the trial court. The record shows Ms. Cole

complied with all the requirements of that order, and took every opportunity to have

contact with Tracy. However, beginning on 21 October 2017, the Dunns unilaterally

stopped taking her calls as required by the order and Ms Dunn blocked Ms. Cole’s

phone number, ending all communication between Ms. Cole and Tracy. Ms. Cole filed

her motion to show cause and, in the Dunns’ reply, they stated that Ms. Dunn “is the

best person to determine what is harmful to the minor child.” At the 29 January 2018

show cause hearing, Ms. Dunn testified she made the decision to stop the phone calls

with Ms. Cole. Although, during the hearing, the trial court made a last-minute effort

to contact a therapist for a supervised in-person visitation, the therapist replied to

the Dunns’ counsel by phone that she did not have time to prepare.

 The record shows that Ms. Cole exercised her rights for in-person visitation

and to communicate with and develop her relationship with Tracy to the greatest

extent permitted. That she has been unable to visit her daughter in-person in two

years is attributable to the actions of the Dunns and the order of the trial court, with

which she has fully complied. “When examining a legal parent’s conduct to determine

whether it is inconsistent with his or her constitutionally-protected status, . . . the

gravamen of ‘inconsistent acts’ is the volitional acts of the legal parent that relinquish

 - 41 -
 DUNN V. COVINGTON

 Opinion of the Court

otherwise exclusive parental authority to a third party.” Mason v. Dwinnell, 190 N.C.

App. 209, 228, 660 S.E.2d 58, 70 (2008) (emphasis added). In these circumstance, Ms.

Cole’s inability to see her daughter face-to-face for two years did not show volition on

her part. To hold that Ms. Cole is unfit because she has not seen her daughter in-

person in two years under these circumstances would be, as the trial court

characterized this portion of its own order at the contempt hearing, “a catch 22

situation.” We hold her inability to see or communicate with her daughter does not

support a finding that Ms. Cole was unfit or acted inconsistent with her

constitutionally-protected status.

 III. Conclusion

 In the permanent custody order on appeal before us, as well as the original

temporary custody order, the trial court failed to determine whether Ms. Cole

forfeited her paramount right by acting inconsistent with her constitutionally-

protected status prior to applying the “best interest of the child” analysis. In both

orders, the trial court conflated the “best interest of the child” analysis with the

separate analysis of Ms. Cole’s constitutional status under Petersen and its progeny.

It also failed to articulate and apply the “clear and convincing” standard of proof

required by David N. We also hold that many of the trial court’s factual findings are

not supported by competent evidence or do not support a finding that Ms. Cole acted

inconsistent with her constitutionally-protected status. Therefore, we vacate the

 - 42 -
 DUNN V. COVINGTON

 Opinion of the Court

permanent custody order granting custody to the Dunns in its entirety. We remand

this case to the trial court with instructions to enter a new permanent custody order

and first conduct the proper constitutional analysis, consistent with this opinion and

the precedents of our courts, employing the “best interest of the child” test only if the

movant first establishes, by clear and convincing evidence, that Ms. Cole acted

inconsistent with her constitutionally-protected status as Tracy’s natural parent.

 Undoubtedly, Ms. Cole was in a precarious position in 2015 when she chose to

take the Dunns’ offer and move her family from an extended-stay motel in Arizona to

the Dunns’ residence in Emerald Isle and, once there, took multiple jobs that paid

little money. Her felon status made obtaining work more difficult and becoming

dependent on opioids compounded her problems. However, her situation was

primarily based on socioeconomic factors our courts have long held are irrelevant to

the question of a natural parent’s fitness. Despite substantial positive changes in Ms.

Cole’s life in the intervening years, the trial court found in its permanent custody

order that Ms. Cole had acted inconsistent with her constitutionally-protected status

while conflating the “best interest of the child” standard with the question of whether

she was unfit or acted inconsistent with her constitutionally-protected status, failing

to apply a clear and convincing standard of proof, and relying on factual findings not

supported by competent evidence. We vacate the trial court’s permanent custody

 - 43 -
 DUNN V. COVINGTON

 Opinion of the Court

order awarding custody to the Dunns and remand for proceedings consistent with

this opinion.

 VACATED AND REMANDED.

 Judges COLLINS and HAMPSON concur.

 - 44 -